**A. J. TRISTANI SUCRS., Inc., v. BUSCAGLIA, Treasurer, et al.**

**R. SANTAELLA & BROTHER, Inc., v. SAME.**

Nos. 4272, 4273.

Circuit Court of Appeals, First Circuit.

Feb. 27, 1948.

Rehearing Denied April 9, 1948.

Second Petition for Rehearing Denied April 23, 1948.

Mariano Acosta Velarde, of San Juan, P. R. (Daniel Pellon Lafuente, of San Juan, P. R., on the brief), for appellants.

I. Henry Kutz, Sp. Asst. to Atty. Gen., (Theron L. Caudle, Asst. Atty. Gen., Helen R. Carloss and Lee A. Jackson, Sp. Assts. to Atty. Gen., and Mastin G. White, Sol., and Irwin W. Silverman, Chief Counsel, Division of Territories and Island Possessions, U. S. Department of the Interior, both of Washington, D. C., on the brief), for appellees.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

The appellants in these two cases each brought suit against the Treasurer of Puerto Rico for the refund of "additional" excise taxes on cigarettes imported into Puerto Rico, paid pursuant to § 8 of Act No. 22, approved June 18, 1939, Laws P. R. Special Sess. 1939, p. 100 (amended by § 4 of Act No. 149, approved May 6, 1940, Laws P. R. 1940, p. 900), and pursuant to § 5 of Act No. 22, approved December 3, 1942, Laws P. R. 2d and 3d Special Sess. 1942, pp. 118–120. In litigation by other taxpayers refunds were obtained because these taxing acts were held invalid by the Supreme Court of Puerto Rico. Puerto Rico Tobacco Corp. v. Buscaglia, Treasurer, 62 P.R.R. 782 (1944); Axton Fisher Tobacco Co. v. Buscaglia, Treasurer, 65 P.R.R. 125 (1945). Appellee-Treasurer no longer challenges the correctness of the decisions just cited, and the arguments be-

fore us on the present appeals proceeded on the basis that the excise taxes in question were unlawfully collected from appellants. The Supreme Court of Puerto Rico held that appellants were not entitled to recover, because they—unlike the taxpayers in Puerto Rico Tobacco Corp. v. Buscaglia, Treasurer, and Axton Fisher Tobacco Co. v. Buscaglia, Treasurer, supra— had misconceived their statutory remedy and had not complied with the conditions under which Puerto Rico, by the applicable statutes, had consented to be sued. Puerto Rico cannot be sued without its consent. People of Porto Rico v. Rosaly y Castillo, 1913, 227 U.S. 270, 273, 274, 33 S.Ct. 352, 57 L.Ed. 507; Puerto Rico v. Shell Co., 1937, 302 U.S. 253, 262, 58 S.Ct. 167, 82 L.Ed. 235; Bonet (Sancho) v. Yabucoa Sugar Co., 1939, 306 U.S. 505, 506, 59 S.Ct. 626, 83 L.Ed. 946.

" 'Since the two cases arose on substantially similar facts and presented identical questions of law, they were heard together on appeal and submitted on a single brief.

Appellants are corporations created and organized under the laws of Puerto Rico. At various dates during the period June, 1939, through October, 1942, they imported cigarettes into Puerto Rico from continental United States, on which the insular Treasurer collected the excise tax imposed by the acts above cited. Appellants paid said tax by purchasing and attaching to the cigarettes so imported the proper internal revenue stamps, in order, as they allege, to escape from the prosecutions and penalties fixed by law. During the period aforesaid, appellant A. J. Tristani Sucrs., Inc., thus paid excise taxes amounting in the aggregate to $425,623.70, of which $141,595.00 was paid under protest, and appellant R. Santaella & Brother, Inc., thus paid excise taxes amounting in the aggregate to $857,782.73, of which $422,661.23 was paid under protest. Why the taxes were sometimes paid under protest and sometimes not, does not appear.

No steps were taken by appellants to obtain a refund until October 17, 1944, on which date they filed with the Treasurer their separate petitions for refund, in the amount of $425,623.70 and $857,782.73, re-spectively. After some delay, the Acting Treasurer, by letters dated August 6, 1945, formally notified appellants that their claims for refund had been refused. Thereafter, on August 22, 1945, and on August 29, 1945, respectively, appellants filed their complaints in the Tax Court of Puerto Rico, pursuant to the provisions of Act No. 169, approved May 15, 1943, Laws P.R. 1943, p. 600,. seeking a decree for refund. The complaints were dismissed by orders of the Tax Court entered June 17, 1946. Upon certiorari, the Supreme Court of Puerto Rico, by judgments entered January 29, 1947, affirmed these orders of the Tax Court, and the appeals now pending before us were thereafter duly taken.

For an understanding of the case it is necessary to set forth the main outlines of a somewhat complicated statutory evolution in the matter of refund of taxes illegally collected.

So far as we have been able to find, Act No. 35, approved March 9, 1911, Laws P.R. 1911, p. 124, is the earliest statute under which Puerto Rico expressly waived its immunity from suit for tax refunds. That act provided that a taxpayer who made a payment under protest might within thirty days thereafter bring suit for refund in a court of competent jurisdiction. Section 4 of the act provided that "there shall be no other remedy in any case of the collection of revenue, or attempt to collect revenue illegally." Act No. 35 was repealed by Act No. 17, approved May 13, 1920, Laws P.R. 1920, p. 124, which provided for payment under protest and suit within fifteen days thereafter in the proper district court. Act No. 17, in turn, was repealed by Act No. 9, approved June 23, 1924, Laws P.R. Special Sess. 1924, p. 70, which elaborated the procedure for payment under protest and provided that a taxpayer who shall have paid under protest might, within thirty days thereafter, sue the Treasurer for refund in a court of competent jurisdiction. Act No. 8, approved April 19, 1927, Laws P.R. 1927, p. 122, repealed the previous act dealing with the matter and enacted that a taxpayer having paid under protest might "within the term of one year from the date of payment, sue the Treasurer of Porto Rico in

an insular court of competent jurisdiction, or in the District Court of the United States for Puerto Rico, to secure the return of the amount protested." By § 2 of Act No. 17, approved November 21, 1941, Laws P.R. Special Sess. 1941, p. 54, the legislature amended Act No. 8 of 1927 by shortening to thirty days the period within which a taxpayer having paid under protest might bring suit, and by excluding from its provisions property, inheritance, and income taxes, for which a special procedure had been established six months earlier by Act No. 172, approved May 13, 1941, Laws P.R. 1941, p. 1038, creating the Court of Tax Appeals of Puerto Rico.

The Court of Tax Appeals was given jurisdiction "to revise the assessment and reassessment of personal and real property" and to "take cognizance of all claims which may be brought before it by interested parties, against the decisions of the Treasurer of Puerto Rico which may affect the payment of property taxes, income taxes, and inheritance taxes." There had to be an administrative decision by the Treasurer before the jurisdiction of the Court could be invoked. Since the Court of Tax Appeals was given no jurisdiction over refund of excise taxes, the remedy in such cases remained as before—payment under protest and suit for refund in the appropriate district court. But Act No. 169 of May 15, 1943, Laws P.R. 1943, p. 600, amended Act No. 172 of May 13, 1941, by changing the name of the tribunal to the Tax Court of Puerto Rico and enlarging its jurisdiction. The Tax Court was given "exclusive jurisdiction to take cognizance of all cases of revision of the assessment or reassessment of personal property, tangible or intangible, or of real property, and of all actions * * * relating to or affecting the levying, collection, payment, return, or reimbursement of all kinds of taxes, including excise and income taxes * * * and any other taxes or imposts, as well as to take cognizance of taxes improperly paid, or paid in excess, or unlawfully collected, the return of which may have been refused by the Treasurer." It was further provided that as a prerequisite to invoking the jurisdiction of the Tax Court, the taxpayer must resort in the first instance to the Treasurer by application for refund of taxes improperly collected; and that complaint must be filed in the Tax Court within thirty days following the date of service of notice by the Treasurer of his refusal to make such refund. In their petitions to the Treasurer for refund, and in their complaints filed in the Tax Court, appellants purported to be proceeding solely under the provisions of Act No. 169. ·

In view of the line of reasoning adopted by the Supreme Court of Puerto Rico, to be mentioned later, it is relevant now to consider what was the status of appellants' claims for refund just prior to the enactment of Act No. 169 in 1943:

As to the payments which appellants made under protest prior to November 21, 1941, their right to sue for refund under Act No. 8 of April 19, 1927, prescribed after the expiration of the one-year term, computed from the date of the respective payments. As to payments which appellants made under protest between November 21, 1941, and October, 1942, their right to sue for refund prescribed within thirty days from the date of the respective payments, under the amendatory provision of Act No. 17 of November 21, 1941. As to payments which were made without protest during these periods, the right to sue for refunds, under the acts just mentioned, was lost for two reasons, failure to protest at the time of payment and lapse of time.

But appellants claim that they had an alternative remedy, which remained intact, unaffected by the lapse of their right to sue for refund under Act No. 8 of April 19, 1927, in its original form and as amended by the Act of November 21, 1941. As the basis of this contention, they invoked for the first time in the Supreme Court of Puerto Rico, and again here on appeal, the provisions of the Act of February 12, 1904, Laws P.R. 1904, p. 182. Section 1 of this 1904 Act provided as follows:

"Whenever it is found, either upon the application of any taxpayer satisfactory to the Treasurer of Porto Rico, or by the auditor or treasurer upon the revision and correction of the tax receipts, that any

moneys have been collected by the Treasurer of Porto Rico improperly, or in excess of the proper amount, upon the approval of the Governor, the Auditor of Porto Rico is hereby authorized to issue a settlement warrant in favor of the taxpayer for the amount of such excess of the amount improperly paid."

They say that since the 1904 Act contained no time limitation, application to the Treasurer for refund thereunder might be made at any time after payment of the tax; that if the tax was illegally collected, it then became the duty of the Treasurer to make the refund; that this duty could have been judicially enforced by a writ of mandamus; that no period of limitation being expressly provided by law, the fifteen-year limit in the catch-all provision of § 1864, Civ.Code of P.R. 1930 Ed. (§ 1865 of the 1902 Ed.) was applicable to such mandamus action; that Act No. 169 of May 15, 1943, merely substituted the remedy of a complaint in the Tax Court for the mandamus remedy theretofore available to appellants to compel the Treasurer to perform his mandatory duty under the Act of February 12, 1904.

Appellants cite no insular precedent to sustain their proposition that mandamus was available to enforce a refund under the Act of February 12, 1904. In its opinion the Supreme Court of Puerto Rico said that this act "does not establish any right in favor of the taxpayer," by which, we take it, the court meant that the act provided only an administrative remedy and gave no consent to suit in the courts for enforcement of a refund. Certainly, no express provision was made for a judicial remedy in the Act of February 12, 1904, and we cannot say that the Supreme Court of Puerto Rico committed manifest error in refusing to read into the law, by implication merely, such an extraordinarily liberal consent to suit for tax refunds. See Bonet (Sancho) v. Yabucoa Sugar Co., 1939, 306 U.S. 505, 59 S.Ct. 626, 83 L.Ed. 946; Braun v. United States, 1934, 8 F. Supp. 860, 864, 80 Ct.Cl. 211, certiorari denied 1935, 295 U.S. 760, 55 S.Ct. 919, 79 L.Ed. 1702. Cf. United States ex rel. Girard Trust Co. v. Helvering, 1937, 301 U.S.

540, 543, 57 S.Ct. 855, 81 L.Ed. 1272. Considering the restrictive provisions of the line of statutes above cited, commencing with Act No. 35 of March 9, 1911, all of which provided that taxpayers in order to enforce a refund had to pay under protest and then commence suit against the Treasurer within a brief period of time thereafter, it hardly makes sense to suppose that there coexisted another legal remedy available to taxpayers whether they paid under protest or not, namely, to apply to the Treasurer for refund of a tax unlawfully collected at any time in the past, and, upon the Treasurer's refusal to refund, to compel him to do so by petition for a writ of mandamus filed at any time within fifteen years.

Assuming, therefore, as we must, that appellants had lost all right to sue for refund under the laws in effect when the payments were made, the question remains whether their lapsed claims were revived and again made judicially enforceable by Act No. 169 of May 15, 1943, above cited. It is the contention of appellants that they have complied literally with all the requirements of Act No. 169; that is, they applied to the Treasurer for refund of a tax which had been unlawfully exacted, the Treasurer notified them of his refusal to make the refund, and within thirty days thereafter they filed their complaints in the Tax Court. The argument was not persuasive to the court below, which applied a rule of construction that, in the absence of "clear and definite provisions" in Act No. 169 so requiring, it would be unwarranted to infer that "the lawmaker intended to revive all the claims which might have existed in the past, without any limitation as to time, and which were extinguished or barred" by the laws in force at the time the respective payments were made. The rule so applied is not unfamiliar to us in continental United States. See Crawford, The Construction of Statutes, § 349 (1940); 1 Sutherland, Statutes and Statutory Construction, § 1936, note 13 (3d Ed. 1943); Wood, Limitation of Actions, § 12 (3d Ed. 1901). As stated by Cardozo, J., in Hopkins v. Lincoln Trust Co., 1922, 233 N.Y. 213, 215, 135 N.E. 267: "Revival is an extreme exercise of legislative power. The

will to work it is not deduced from words of doubtful meaning. Uncertainties are resolved against consequences so drastic." See also Fullerton-Krueger Lumber Co. v. Northern Pacific Ry. Co., 1925, 266 U.S. 435, 45 S.Ct. 143, 69 L.Ed. 367. Even if this rule of construction were not traditional with the courts of this country, it is a rule which the Supreme Court of Puerto Rico was at liberty to adopt and apply in the interpretation of a local act. As to this, we need only refer to the pointed admonitions of the Supreme Court of the United States in De Castro v. Board of Commissioners, 1944, 322 U.S. 451, 455, 458, 459, 64 S.Ct. 1121, 88 L.Ed. 1384; Bonet v. Texas Co., 1940, 308 U.S. 463, 471, 60 S.Ct. 349, 84 L.Ed. 401; Bonet (Sancho) v. Yabucoa Sugar Co., 1939, 306 U.S. 505, 510, 59 S.Ct. 626, 83 L.Ed. 946.

The judgments of the Supreme Court of Puerto Rico are affirmed.

On Petition For Rehearing.

MAGRUDER, Circuit Judge.

Appellants have filed a petition for rehearing, in which they call our attention to Gerardino v. Tax Court of Puerto Rico, decided by the Supreme Court of Puerto Rico on February 20, 1948, which was only one week before we handed down our decision in the above-entitled cases. It is claimed that in the Gerardino case the Supreme Court of Puerto Rico has given an interpretation to the applicable local statutes which in effect constitutes a repudiation of that court's reasoning, which we accepted, in the Tristani and Santaella cases.

We have examined the Gerardino opinion with care, and do not find that it in any way weakens the force of the earlier cases. Indeed, at several points in its opinion, the Supreme Court of Puerto Rico cites with approval its decision in the Tristani and Santaella cases. The crucial point in the Gerardino case, differentiating it from the earlier cases, is that Gerardino paid his tax in 1944, which was after Act 169 of 1943 had become effective. In such a case, the court concludes from the perplexing statutes that the taxpayer has two alternative remedies when the Treasurer makes demand for the payment of a tax: (1) He may make payment under protest and sue in the Tax Court for refund within thirty days after the date of the Treasurer's demand, which is the "administrative decision" required by § 4 of Act 169 to give jurisdiction to the Tax Court (see paragraph 5 of § 3 of Act 169); or (2) he may make payment, whether voluntarily or under protest, after which he may within four years of the date of payment file a petition with the Treasurer for refund, and then sue in the Tax Court within thirty days after the service of notice of the administrative decision of the Treasurer denying the refund petition (see paragraph 4 of § 3 of Act 169). In the Tristani and Santaella cases, the taxpayers had made their payments of the taxes in question before the passage of Act 169 of 1943. Their right to sue for refunds had lapsed, under the applicable acts in force prior to the passage of Act 169, for the reasons set forth at length in our opinion of February 27, 1948. This conclusion is fortified by the further comments of the Supreme Court of Puerto Rico in the Gerardino case. In addition, that court specifically noted that the Gerardino case was not concerned with the point decided in the Tristani and Santaella cases, which was that Act 169 was not intended "to revive causes of action which were barred, both as to right and remedy, because the taxpayer did not avail himself in time of the remedy provided by the laws in force at the time of payment of the sums he was now claiming."

We note sympathetically the remarks of the Supreme Court of Puerto Rico at the close of its opinion in the Gerardino case, to the effect that there is obvious need for "a plain, uniform and integrated procedural statute for all tax litigation" which will eliminate the "series of elaborate booby traps" now lurking in a "morass" of conflicting or confusing statutes.

The petition for rehearing is denied.