MARGARET E. HARRIS
v.
MUNICIPALITY OF ST. THOMAS AND ST. JOHN, et al.,
No. 11064
United States Court of Appeals
Third Circuit
Argued at Charlotte Amalie
January 26, 1954
Decided April 26, 1954
*See, also, 212 F.2d 323*

GEORGE H. T. DUDLEY, Charlotte Amalie, St. Thomas, Virgin Islands, *for appellant*

CYRIL MICHAEL, District Attorney, Charlotte Amalie, St. Thomas, Virgin Islands, *for appellee*

Before MARIS, MAGRUDER and HASTIE, *Circuit Judges*

MAGRUDER, *Circuit Judge*

This is an appeal from an order of the District Court of the Virgin Islands (2 V.I. 251), 111 F.Supp. 63, dismissing a complaint against the Municipality of St. Thomas and St. John seeking damages for personal injuries. It was alleged that the plaintiff, in Charlotte Amalie, V.I., on the evening of September 19, 1952, while walking with all due care along a dark street completely lacking in proper illumination for safe travel, suffered the injuries in question as a result of tripping over a loose steel plate designed to cover a street opening surrounding the access pipe to a salt water main. While so far the complaint sounded like a routine tort action for negligence, the plaintiff, to overcome a legal obstacle the nature of which we shall indicate shortly, sought to give her cause of action a contractual coloration by alleging in the final paragraph of her complaint against the Municipality that "plaintiff's injury aforesaid was occasioned through the failure of defendant Municipality to discharge its implied contractual obligation to maintain said public way in a safe condition for the protection of pedestrians making legitimate use of same."

The district court dismissed the complaint for lack of jurisdiction over the defendant Municipality of St. Thomas and St. John. We think the order of the district court should be affirmed.

The present division of the Virgin Islands into the Municipality of St. Thomas and St. John and the Municipality of St. Croix goes back to the time when the Islands were under the jurisdiction of the Kingdom of Denmark. Under § 10 of the Colonial Law for the Danish West Indies, issued November 27, 1863, the Islands were divided into two districts of administration, viz., the island of St. Thomas with St. John and their adjacent islets, and the island of St. Croix with its adjacent islets. Section 13 of this law provided:

"Each of the two Districts of Administration shall form a separate Municipality. For each municipality a Colonial Council shall be established, which Council, besides exercising that part of the Legislative Authority vested therein, shall, also, in the manner hereinafter prescribed, partake in the administration of the economical affairs of the Municipality."

The same provisions were continued in §§ 10 and 13, respectively, of the revised Colonial Law for the Danish West Indies (No. 124, issued April 6, 1906 [prec. 1 V.I.C.]). The word "municipality" is the accepted English rendition of the Danish word "Commune" as used in § 13.*

There are authorities indicating that the Danish "Commune", or "Kommune", is subject to suit for damages for injuries resulting from negligence in the maintenance of the public streets. See Poul Anderson, Offentligretligt Erstatnings Ansvar (Copenhagen 1938) pp. 92, 102, and cases cited therein. Since § 67 of the Danish Colonial Law aforesaid provided that the common and statute law of Denmark should as hitherto be applicable in the colonies, it may be that under Danish law the Municipality of St. Thomas and St. John was subject to such tort liability. If that was so, then § 2 of the Act of Congress of March 3, 1917, 39 Stat. 1132 (prec. 1 V.I.C.), passed to provide a temporary government for the Islands upon their acquisition from Denmark, had the effect of continuing in force this liability of the municipality. We have, however, been referred to no litigated case in which this liability was actually adjudicated.

When finally in 1936 Congress came to pass an Organic Act, 49 Stat. 1807 (prec. 1 V.I.C.), for the former Danish West Indies, it did not provide that the people of the Virgin Islands should constitute a single body politic. Instead,

*"§ 13. Hver af de tvende Overovrighedskredse udgjor en soerlig Commune. For hver af disse oprettes el Colonialraad, der ved Siden af den det tillagte Deel i Lovgivningsmyndigheden deeltager i Bestyrelsen af Communens oconomiske Anliggender paa den herefter fastsatte Maade."

it continued the long-existing administrative division of the Islands. Section 2 of the Organic Act provided:

"The insular possession which is the Virgin Islands shall be divided into two municipalities, namely, (1) the municipality of Saint Croix and (2) the municipality of Saint Thomas and Saint John. The boundaries of said municipalities shall be the same as at present established in accordance with laws in force on the date of enactment of this Act, and the capital and seat of the central government shall be Saint Thomas. . . ."

Section 3 provided:

"The inhabitants of the municipality of Saint Croix and of the municipality of Saint Thomas and Saint John are hereby constituted into bodies politic and juridic, under the present name of each such municipality, and as such bodies they shall have perpetual succession and power (a) to adopt and use an official seal; (b) to sue *and in cases arising out of contract to be sued;* (c) to demand the fulfillment of obligations under the law and to defend and prosecute all actions at law; (d) to acquire property by purchase, exchange, donation or bequest, by virtue of proceedings for the collection of taxes, by eminent-domain proceedings, or by any other means provided by law, and to possess, administer, and govern such property; and (e) to alienate or encumber any of their property, subject to the provisions of this Act." [Italics added.]

Following the pattern of the colonial councils established by the Danes, it was provided that each municipality should have its own "municipal council" in which local legislative powers were vested. The two municipal councils meeting in joint assembly became the " 'Legislative Assembly of the Virgin Islands' ", with power to enact legislation applicable to the Virgin Islands as a whole, § 7. The executive power of the Virgin Islands and of the two municipalities was vested in a governor appointed by the President, § 20.

S. 4524 of the 74th Congress, which as amended became the Organic Act, was drafted in the office of the Secretary of the Interior. In an earlier version of the bill, as in-

troduced in the 72d Congress, § 3 read as follows (see Joint Hearings before the Committee on Territories and Insular Affairs, United States Senate, and Committee on Insular Affairs, House of Representatives, 72d Cong., 2d Sess., on S. 5457 and H. R. 14319, p. 50) :

"That the inhabitants of the municipality of Saint Croix and of the municipality of Saint Thomas and Saint John are hereby constituted into bodies politic and juridic, under the present name of each such municipality, and they shall have perpetual succession and power (a) to adopt and use an official seal; (b) to sue and be sued; . . ." etc.

To have endowed the Municipality of St. Thomas and St. John, as provided in the original bill, with the unqualified power "to sue and be sued", would not necessarily have meant that such Municipality was subject to liability for torts of its agents and employees. Thus in § 7 of the Foraker Act, 31 Stat. 79 (prec. 1 L.P.R.A.), the original Organic Act for the near-by island of Puerto Rico, it was provided that the inhabitants of the island "shall constitute a body politic under the name of The People of Porto Rico, with governmental powers as hereinafter conferred, and with power to sue and be sued as such." In People of Porto Rico v. Rosaly, 1913, 227 U.S. 270, 33 S. Ct. 352, 57 L. Ed. 507, it was held that the effect of the Organic Act was to endow this body politic with a qualified sovereignty, having the sovereign characteristic of immunity from suit without its consent; that the provision of § 7 aforesaid was merely an express recognition of the power to sue which would be implied from the nature of the charter grant as a whole, "and a recognition of a liability to be sued consistently with the nature and character of the government; that is, only in case of consent duly given." 227 U.S. at page 277, 33 S. Ct. at page 354, 57 L. Ed. at page 510. In fact, the second Organic Act, 39 Stat. 951, passed March 2, 1917 (prec. 1 L.P.R.A.), did not contain

the express words empowering the People of Puerto Rico "to sue and be sued as such." Yet there has been continued recognition thereunder that this body politic could be sued, but only with its consent. Puerto Rico v. Shell Co., 1937, 302 U.S. 253, 262, 58 S. Ct. 167, 82 L. Ed. 235; Bonet v. Yabucoa Sugar Co., 1939, 306 U.S. 505, 506, 59 S. Ct. 626, 83 L. Ed. 946; A. J. Tristani Sucrs., Inc. v. Buscaglia, 1 Cir., 1948, 166 F.2d 966, 967.

The tort liability of the District of Columbia, as a "municipal corporation", which the Congress calls it, has had its own special history. See Barnes v. District of Columbia, 1875, 1 Otto 540, 91 U.S. 540; District of Columbia v. Woodbury, 1890, 136 U.S. 450, 10 S. Ct. 990, 34 L. Ed. 472; Harris v. District of Columbia, 1921, 256 U.S. 650, 41 S. Ct. 610, 65 L. Ed. 1146; District of Columbia v. Totten, 1925, 55 App. D.C. 312, 5 F.2d 374; George Washington Inn, Inc. v. Consolidated Engineering Co., Inc., 1935, 64 App. D.C. 138, 75 F.2d 657. It does not furnish a reliable analogy, in a case like the present, involving an Organic Act for one of the unincorporated territories of the United States under which a local government has been created along the general lines of the American system of dividend powers — legislative, executive, and judicial. See Kawananakoa v. Polyblank, 1907, 205 U.S. 349, 354, 27 S. Ct. 526, 51 L. Ed. 834.

■ At any rate, when S. 4524 was introduced into the 74th Congress, the language of S. 5457 of the 72d Congress, "to sue and be sued", had been significantly changed to read (as it does now in the enacted law), "to sue and in cases arising out of contract to be sued". The Senate committee report (No. 1974, 74th Cong., 2d Sess.) is silent on the reason for the change. Nor is any clue to be found in the ensuing debates on the floor of the Senate and the House. See 80 Cong. Rec. 6603-6611, 8588-8591 (1936). But the language of § 3(b) of the Act is plain enough in its

negative inference that the Municipality of St. Thomas and St. John was not to be endowed with capacity to be sued in tort. Perhaps the amendatory language was inserted to preclude the very argument advanced by the plaintiff in this case, viz., that Congress, in describing the body politic and juridic as the "municipality" of St. Thomas and St. John, thereby intended the same consequences of tort liability to attach as if it had used the phrase "municipal corporation" which it had employed to describe the local government of the District of Columbia. As we have seen above, the only significance of the use by Congress of the word "municipality" seems to have been that it chose to continue a usage inherited from the Danes. Again, the amendatory language in § 3(b) may have been inserted to make clear that whatever potential tort liability may have rested on the Municipality of St. Thomas and St. John under the old Danish law was not to continue under the Organic Act. But whatever the reason Congress had in mind, the statutory language seems clear and unambiguous. It cannot be read in a limited sense as being applicable only to exclude tort liability for damages caused by the municipality in consequence of its governmental activities, leaving it subject to tort liability for harms resulting from a non-governmental or proprietary activity — a dichotomy which has caused endless confusion in the law of municipal corporations in the states. No such distinction appears on the face of the Organic Act. The matter, of course, is entirely within the discretion of the Congress.

■ ■ To circumvent this statutory language, plaintiff has sought to label the present complaint as setting up a cause of action in contract. The argument, as we understand it, is that by the terms of the Organic Act there exists a contract between the Federal Government and the municipality that the latter will maintain the streets and pub-

lic ways in a safe condition for the benefit and protection of pedestrians; that plaintiff as a pedestrian making legitimate use of the streets is a third party beneficiary of this contract; and that defendant municipality failed to discharge its contract obligation. There seem to be two answers to this somewhat strained contention: (1) If the reasoning of People of Porto Rico v. Rosaly, supra, is applicable here, as we think it is, the mere grant to the local "body politic and juridic" of capacity to be sued in contract means no more than that the municipality is liable in contract to the extent that it may have consented to be sued, by appropriate act of its legislative body; and we have been referred to no ordinance of the municipal council consenting to suit in such a case as the present. (2) As stated in the opinion of the district court (2 V.I. 265, 111 F. Supp. 70): "Neither the Territory nor the Municipality has any inherent power to bargain and agree with its sovereign, and such revocable power as the sovereign may grant can in no sense be considered a contract between them."

In 1936, when the Organic Act was passed, the United States itself had consented to be sued only in cases of contract; and it is therefore not surprising that in the Organic Act for the Virgin Islands Congress chose to limit the capacity of the two municipalities to be sued to "cases arising out of contract". Ten years later, following more liberal notions as to the desirability of waiving sovereign immunity from suit, Congress passed the Federal Tort Claims Act, 60 Stat. 842, 28 U.S.C. §§ 1346, 2671 et seq., in which it subjected itself to tort liability under the conditions stated. It may be that if Congress had thought about the matter in 1946 when enacting the Federal Tort Claims Act, it might have been willing at the same time to strike out from § 3(b) of the Organic Act for the Virgin Islands the phrase "in cases arising out of contract" so as to endow the two municipalities with capacity to be sued in all cases.

But Congress failed to amend the Organic Act. And even if Congress had amended the Organic Act so as to endow the municipalities with capacity to sue and be sued in all cases, we suppose this would still have left it that these two subordinate bodies politic and juridic, having "many of the attributes of quasi sovereignty possessed by the states", 302 U.S. at page 262, 58 S. Ct. at page 171, could not be sued except to the extent that each consented to be sued, by appropriate legislation of its respective legislative body. See People of Porto Rico v. Rosaly, supra. Cf. Bernardine v. City of New York, 1945, 294 N.Y. 361, 62 N.E. 2d 604, 161 A.L.R. 364.

The order of the District Court is affirmed.