**MARGARET E. HARRIS, Appellant**

v.

**DONALD S. BOREHAM**

**MARGARET E. HARRIS, Appellant**

v.

**UNITED STATES**

Nos. 11710, 11711

United States Court of Appeals
Third Circuit

Argued January 31, 1956

Decided April 30, 1956

*See, also, 233 F.2d 110*

GEORGE H. T. DUDLEY, Charlotte Amalie, Virgin Islands, *for plaintiff*

CROXTON WILLIAMS, Charlotte Amalie, Virgin Islands, *for defendant Boreham*

LEON P. MILLER, United States Attorney, Charlotte Amalie, Virgin Islands, *for United States*

Before MARIS, MAGRUDER and WOODBURY, *Circuit Judges*

MARIS, *Circuit Judge*

The plaintiff in these cases alleged that while walking along Trumpeter Gade in the town of Charlotte Amalie, on the island of St. Thomas, on the evening of September 19, 1952, she was injured as a result of tripping over a loose steel plate designed to cover a street opening surrounding the access pipe to a salt water main pipeline. To recover damages for the injuries thus occasioned she brought suit in the District Court of the Virgin Islands against the Municipality of St. Thomas and St. John, Donald S. Boreham, who was the Superintendent of Public Works of the municipality, Ella Blanche Barbel, who

was the owner of adjacent property, and John Doe, an unknown property owner alleged also to be liable. The municipality thereupon moved to dismiss the complaint as to it on the ground that it was immune from suit on a tort claim without its consent, which motion was granted by the district court. Harris v. Municipality of St. Thomas and St. John (2 V.I. 251), 111 F. Supp. 63. Upon appeal the order of the district court dismissing the complaint as against the municipality was affirmed by this court. Harris v. Municipality of St. Thomas & St. John, 3 Cir., 1954 (3 V.I. 502), 212 F.2d 323.

Following dismissal of her complaint as against the municipality, the plaintiff brought suit against the United States under the Federal Tort Claims Act (28 U.S.C. § 1346) for damages for her injuries. A motion by the United States to dismiss this suit for want of jurisdiction was denied by the district court. (3 V.I. 76) 125 F. Supp. 536. The plaintiff's suit against the United States and her prior suit against Boreham, Barbel and John Doe were then consolidated for trial and were tried in the district court. During the course of the trial the suit was dismissed as to Barbel on the plaintiff's motion and it was not pressed as to John Doe, who was not further identified. At the close of the plaintiff's case the United States again moved for dismissal for want of jurisdiction but the district court adhered to its previous ruling on this question. The trial resulted in the dismissal on the merits of the complaints against both the United States and Boreham, D.C. (3 V.I. 170), 130 F. Supp. 533. The appeals by the plaintiff which are now before us followed.

We will consider first the case against the United States. The plaintiff's claim is predicated upon the theory that the public streets of the town of Charlotte Amalie, in the Municipality of St. Thomas and St. John,[1] are the property

[1]The Municipality of St. Thomas and St. John ceased to exist on January 10, 1955, pursuant to section 10 of the Revised Organic Act of the Virgin Is-

of the United States, that the plaintiff was making legiti-mate use of those streets as a member of the public at the time of her injury, that Boreham was an employee of the United States engaged in the business of the United States in maintaining those streets and as such was guilty of negligence imputable to the United States in failing to maintain Trumpeter Gade in a safe condition for the use of pedestrians.

██ ██ The Federal Tort Claims Act imposes liability upon the United States only for those injuries which are "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."[2] This means that for the United States to be liable the federal employee must at the time of his negligent or wrongful act or omission be acting in the line of his federal duties.[3] We accordingly must decide whether the streets of Charlotte Amalie are property of the United States and whether Boreham was an employee of the Government of the United States acting with respect to those streets within the scope of his office or employment as such. Only if those questions are decided in the affirmative need we consider in the case against the United States whether Boreham was guilty of a negligent or wrongful act or omission in carrying out his duties with respect to those streets.

██ It is settled that Congress has sovereignty over the territories of the United States and accordingly has power to legislate for a territory with respect to all sub-

lands (1954; prec. 1 V.I.C.), and its property was by that Act transferred to the government of the unincorporated territory of the Virgin Islands. 48 U.S.C. § 1576. In this opinion we refer to the municipality rather than to the territory, since the former was in existence at the time of the plaintiff's injury.

[2]28 U.S.C. § 1346(b).

[3]Fries v. United States, 6 Cir., 1948, 170 F.2d 726, certiorari denied 336 U.S. 954, 69 S. Ct. 876, 93 L. Ed. 1109; United States v. Holly, 10 Cir., 1951, 192 F.2d 221; Elmo v. United States, 5 Cir., 1952, 197 F.2d 230; O'Toole v. United States, 3 Cir., 1953, 206 F.2d 912; Cobb v. United States, D.C.W.D.La.1948, 81 F. Supp. 9. See annotation 1 A.L.R.2d 222.

jects upon which the legislature of a state might legislate within the state. Simms v. Simms, 1899, 175 U.S. 162, 168, 20 S. Ct. 58, 44 L. Ed. 115. It is also settled that Congress may delegate to a territory such of these powers as it sees fit. Binns v. United States, 1904, 194 U.S. 486, 491-492, 24 S. Ct. 816, 48 L. Ed. 1087; Christianson v. King County, 1915, 239 U.S. 356, 364-366, 36 S. Ct. 114, 60 L. Ed. 327. And the right of Congress to revise, alter and revoke these delegated powers does not diminish the powers while they reside in the territory. Hornbuckle v. Toombs, 1873, 18 Wall. 648, 85 U.S. 648, 655-656, 21 L. Ed. 966; District of Columbia v. John R. Thompson Co., 1953, 346 U.S. 100, 106, 73 S. Ct. 1007, 97 L. Ed. 1480. The aim of Congress is to give the territory full power of local self-determination. The local laws enacted under the legislative power granted by Congress are accordingly territorial laws, not laws of the United States. People of Puerto Rico v. Shell Co., 1937, 302 U.S. 253, 58 S. Ct. 167, 82 L. Ed. 235; People of Puerto Rico v. Rubert Hermanos, Inc., 1940, 309 U.S. 543, 60 S. Ct. 699, 84 L. Ed. 916; Arroyo v. Puerto Rico Transp. Authority, 1 Cir., 1947, 164 F.2d 748.[4]

■ ■ These principles apply to the unincorporated territories, such as the Virgin Islands. For it has been held that Congress may create a territorial government for an unincorporated territory and may confer upon it an autonomy similar to that of the states. Gromer v. Standard Dredging Co., 1912, 224 U.S. 362, 370, 32 S. Ct. 499, 56 L. Ed. 801; People of Puerto Rico v. Shell Co.,

[4]In the light of these controlling authorities we cannot subscribe to the statement of Chief Judge Denman in Mafnas v. Government of Guam, 9 Cir., 1955, 228 F.2d 283, that local laws continued in force in a territory by virtue of a provision of its organic act are laws of the United States. Such a view denies the existence of an independent, though delegated, sovereignty in the territory and treats its legislature as a mere federal agency. Compare the dichotomy in the following language which appears in both section 18 of the Organic Act of the Virgin Islands and section 8(c) of the Revised Organic Act (prec. 1 V.I.C.): "The laws of the United States applicable to the Virgin Islands . . . and all local laws and ordinances in force on such date in the Virgin Islands · . . . shall . . . continue in force and effect." 48 U.S.C. §§ 1405q, 1574(c).

1937, 302 U.S. 253, 260-262, 58 S. Ct. 167, 82 L. Ed. 235. And the territorial body politic thus created may be endowed with attributes of sovereignty, such as nonliability to suit without its consent. People of Porto Rico v. Rosaly y Castillo, 1913, 227 U.S. 270, 33 S. Ct. 352, 57 L. Ed. 507. In the Rosaly case the Supreme Court held that Congress by the Foraker Act of 1900 (prec. 1 L.P.R.A.), had conferred such sovereignty upon what was then the unincorporated territory of Puerto Rico.

▆▆▆▆ We think it clear that by the Organic Act of June 22, 1936[5] (prec. 1 V.I.C.), Congress did the same with respect to the two municipalities which then constituted the Virgin Islands.[6] That Act constituted each municipality into a body politic and juridic with perpetual succession and with power to acquire property, to possess, administer, and govern such property and to alienate or encumber it. It provided for a municipal council in each municipality with local legislative powers, a Legislative Assembly with legislative powers for the Virgin Islands as a whole, a Governor to act as chief executive of the Virgin Islands as a whole and of each of the two municipalities, and a district court to exercise the judicial power of the Islands. As the Supreme Court said with respect to the Organic Act of Puerto Rico (1900; prec. 1 L.P.R.A.), "the purpose of Congress . . . was to follow the plan applied from the beginning to the organized territories by creating a government conforming to the American system with defined and divided powers — legislative, executive and judicial . . ." People of Porto Rico v. Rosaly y Castillo, 1913, 227 U.S. 270, 276-277, 33 S. Ct. 352, 354, 57 L. Ed. 507.

▆▆▆▆ Moreover by section 4(a) of the Organic Act of

[5] 48 U.S.C. § 1405 et seq.
[6] Harris v. Municipality of St. Thomas & St. John, 3 Cir. (3 V.I. 502), 1954, 212 F.2d 323. In the opinion in that case the history of the two municipalities is traced and their sovereign immunity from suit upheld.

1936[7] all the property which was acquired by the United States from Denmark under the treaty of cession and which was not reserved by the United States for public purposes within one year after the passage of the Act, was placed under the control of the Government of the Virgin Islands which by definition included the two municipalities. The property thus acquired undoubtedly included the streets in the town of Charlotte Amalie and, since they were not reserved by the United States, they thus became the property of the Municipality of St. Thomas and St. John.

██ ██ It is thus clear that the Municipality of St. Thomas and St. John in the unincorporated territory of the Virgin Islands was a body politic quite distinct from the Government of the United States and that it had attributes of sovereignty which had been delegated to it by the Government of the United States but which were distinct from the powers of that government. It is equally clear that the municipality was endowed by Congress with the sovereign power to acquire, administer, govern and alienate property and that such property must be regarded as belonging to the municipality rather than the United States.

██ That Congress had this distinction in mind is indicated not only by the Organic Act itself but by later enactments. Thus, by the Act of December 20, 1944, which authorized public works projects to assist in the internal development of the Virgin Islands, the Federal Public Works Administrator (afterwards the Secretary of the Interior) was authorized to acquire land for such projects and upon the completion of projects on land acquired under that authorization, the Secretary of the Interior was directed to "transfer all rights and title of the United States therein to the government of the Virgin Islands or the municipality of Saint Thomas and Saint John, or

[7]48 U.S.C. § 1405c(a).

the municipality of Saint Croix, except those projects constructed for Federal agencies."[8] We conclude that the streets in the town of Charlotte Amalie were on September 19, 1952 the property of the Municipality of St. Thomas and St. John rather than the property of the United States.

In constituting the government for the unincorporated territory of the Virgin Islands and its municipalities Congress in the Organic Act of 1936 followed the traditional pattern of providing for the appointment of the principal executive officers of the territorial government by the federal executive.[9] Thus the President was authorized to appoint the Governor and the Government Secretary, and the Secretary of the Interior was authorized to appoint the other executive and administrative officers, such as the Superintendent of Public Works, whose salaries were to be paid from federal funds appropriated for the government of the Virgin Islands.

The Organic Act provided that the executive power of the Virgin Islands and of the municipalities thereof should be vested in the Governor, that he should have general supervision and control of all executive and administrative departments, bureaus and offices of the Government of the Virgin Islands and should appoint, with the advice and consent of the municipal council concerned, all salaried officers and employees of the municipal governments whose salaries were provided for in the budgets of the municipal governments. The Act provided that the Government Secretary should act as Governor in the absence of that official, should have custody of the seal of the Virgin Islands, should promulgate all proclamations and orders of the Governor and all laws enacted by the insular legislative authorities and should have such executive powers and duties as might be prescribed by law or assigned to him by the Governor.

[8] 48 U.S.C. § 1409b (Act of Dec. 20, 1944, ch. 615, § 3, 58 Stat. 829).
[9] See Pomeroy, The Territories and the United States, 1947, pp. 3-5.

■ It is only necessary thus to recount the powers and duties of the Governor and Government Secretary to see that these officials were intended by Congress to be the principal executive officers of the territorial and municipal governments which it had set up in the Virgin Islands. The fact that their salaries were paid from federal funds merely indicates that Congress was willing to this extent to subsidize the local government.[10] By the same token the heads of the executive departments, who functioned under the Governor and carried out his directions in the administration of the territorial and municipal governments, in the absence of a contrary intent by Congress must be regarded as officers of those governments.

■ Boreham, the Superintendent of Public Works of the Municipality of St. Thomas and St. John, was in charge of a department of the government of that municipality under the general supervision and control of the Governor. It is true he had been appointed to that office in 1935 by the Secretary of the Interior upon the recommendation of the Governor of the Virgin Islands, and had continued in office after the passage of the Organic Act of 1936 (prec. 1 V.I.C., 48 U.S.C. § 1405 et seq.). It is also true that his salary was paid from federal funds appropriated by Congress for the Government of the Virgin Islands and the municipalities. It is upon these facts that the plaintiff bases her contention that Boreham must be regarded as having been, at the time here involved, an employee of the Government of the United States within the meaning of the Federal Tort Claims Act (28 U.S.C. § 1346). We do not think that this conclusion follows.

Aside from the letter appointing him to the position, the record does not disclose any order or directive issued

[10]For may years Congress in addition to paying the salaries of executive and legislative officers, made direct appropriations by way of subsidy to meet the annual deficits of the municipal governments. See e.g., Act of July 9, 1952, 66 Stat. 445, 457.

by the Secretary of the Interior or any other department or agency of the United States in respect to Boreham's duties as Superintendent of Public Works of the Municipality of St. Thomas and St. John.[11] On the contrary it appears that his duties were being performed under the supervision and control of the chief executive of the municipality, the Governor. Although it is said that Boreham also had supervisory duties in respect to federal buildings and federal projects, we are not here concerned with those duties, nor need we pass on their effect upon his employment status while engaged in performing them. We consider only the question whether, when acting within the scope of his duties as Superintendent of Public Works of the Municipality of St. Thomas and St. John, Boreham was an employee of the Government of the United States. As used in the Federal Tort Claims Act that phrase is defined as follows:

" 'Employee of the government' includes officers or employees of any federal agency, members of the military or naval forces of the United States, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, with or without compensation."[12]

We are satisfied that Boreham does not come within this definition for he was not an officer or employee of a federal agency nor was he, in supervising the maintenance of the streets of Charlotte Amalie, acting on behalf of such an agency. On the contrary it is clear that he was an official of the Government of the Municipality of St. Thomas and St. John which, as we have pointed out, was a body politic quite distinct from the Government

[11]The plaintiff relies on a document entitled "Description of Work (Assistant Commissioner of Public Works)" which was prepared by Boreham in 1932 at the request of the Department of the Interior enumerating the duties of his former position of Assistant Commissioner of Public Works. This, of course, was not an order or directive from any department of the United States.

[12]28 U.S.C. § 2671.

of the United States and was, therefore, not a "federal agency" within the meaning of the Act.[13]

It necessarily follows from what has been said that in performing his functions as Superintendent of Public Works with respect to the streets of the town of Charlotte Amalie, Boreham was acting as an officer of the Government of the Municipality of St. Thomas and St. John in administering the property of that municipality and not as an officer of the Government of the United States administering its property. We conclude, for the reasons stated, that the district court did not err in dismissing the plaintiff's complaint against the United States.

■ This brings us to plaintiff's second case, her complaint against Boreham personally. This is based upon the proposition that a public officer is personally liable for personal injuries resulting from his negligence in performing his ministerial duties as such an officer. The validity of the proposition may be conceded but we think it has no application to this case. For the district court found from the evidence that while Boreham was charged with the duty of supervising the work of the Public Works Department of the municipality and of his subordinates in that department it was not his duty to go out and make inspections of street openings and the condition of their covers. That, he found, was the duty of the project supervisor of the department. There was no evidence that the project supervisor had reported the defective condition of the street opening cover to Boreham or that Boreham had any notice of its condition.

■ If the condition had existed for such a length of time that the project supervisor should have known of

[13]The Federal Tort Claims Act defines federal agency as follows:
" 'Federal agency' includes the executive departments and independent establishment of the United States, and corporations primarily acting as, instrumentalities or agencies of the United States but does not include any contractor with the United States." 28 U.S.C. § 2671.

it and should have reported it to Boreham for correction, that fact, while perhaps establishing the negligence of the project supervisor, would not stamp Boreham as negligent. For while the project supervisor's negligence, if it existed, might have been imputable under the doctrine of respondeat superior to the municipality which employed him,[14] it would not be imputable under that doctrine to his superior officer who was in this respect merely an intermediate officer and not himself guilty of a negligent act or omission of a duty.[15] Since the evidence amply supports the findings of the district court in this regard its conclusion that Boreham was free from negligence imputable to him personally was right.

The judgments of the district court in each case will be affirmed.

---

[14]This is, of course, a different question from whether the municipality could be sued for such negligence.

[15]Fidelity & Casualty Co. of New York v. Brightman, 8 Cir., 1931, 53 F.2d 161, 166; Rich v. Warren, 6 Cir., 1941, 123 F.2d 198.