**GABRIELLE EDDY, Plaintiff**

**v.**

**VIRGIN ISLANDS WATER AND POWER AUTHORITY, JAMES BROWN, JOHN DOE I, JOHN DOE II, JOHN DOE III, JOHN DOE IV, Defendants**

Civ. No. 1996-48

District Court of the Virgin Islands

Div. of St. Thomas and St. John

February 5, 1997

■■■■■■
■■■■■■■■■
■■■■■■■■■■
■■■■■■■■■■

JAMES M. DERR, ESQ., St. Thomas, U.S.V.I., *for Plaintiff*

CATHY M. SMITH, ESQ., (WAPA), St. Thomas, U.S.V.I., *for Defendant*

MOORE, *Chief Judge*

## MEMORANDUM OPINION

Plaintiff has alleged five causes of action, asserting that this Court has original jurisdiction over two of his claims under federal question jurisdiction, and that the Court should exercise supplemental jurisdiction over the three remaining tort claims as established under territorial law. Defendants have moved to dismiss the complaint, contending that the federal claims fail to state causes of action under which relief may be granted and that all of the claims are barred by workers' compensation exclusivity under Virgin Islands law.

### I. Facts

We take the facts as stated by plaintiff for purposes of deciding this motion to dismiss. On June 2, 1994, plaintiff Gabrielle Eddy ["plaintiff" or "Eddy"] was employed by defendant Virgin Islands Water and Power Authority ["WAPA"] as a first class lineman. Mr. Eddy had not been trained, qualified or given experience in maintenance, upkeep and repair of power lines and switches at WAPA's facility at Krum Bay, St. Thomas, Virgin Islands. Persons who possessed such experience, training or knowledge were classified as electricians, with a different job description than that of plaintiff.

Before June 2, 1994, Eddy had been suspended by WAPA for refusing to perform a job because it was unsafe. In September 1993, plaintiff was suspended for two weeks for refusing to climb a

443

rotted wooden power pole.[1] On other occasions before June 2, 1994, WAPA supervisors, including defendants identified as DOES I through IV in the complaint, threatened, intimidated and harassed Mr. Eddy for refusing or questioning job assignments based on a concern for his safety and the safety of others.

On the morning of June 2, 1994, WAPA management, including James Brown, determined that a switch located in the immediate vicinity of high voltage power lines in the "high yard" at the Krum Bay facility required changing. Defendant James Brown decided that the switch should be changed while energized with over 14,000 volts of electricity. The supervisor of electricians, Mr. Everson Rawlins, was originally assigned this task by WAPA management. Rawlins refused to perform the procedure or to allow any of the electricians under his supervision to perform the work with the switch energized. Rawlins told Brown that the procedure was unsafe and that WAPA should wait until early on a Sunday morning when the switch could be de-energized and replaced safely.

When the electricians would not do the work on the switch while it was energized, James Brown had Mr. Eddy brought to the Krum Bay facility to do the job. Even though plaintiff told Brown that he was not qualified or trained to perform the task, Brown threatened the plaintiff with disciplinary action if he refused to do the work. Wearing polyester clothes and using an uninsulated wrench provided by WAPA, Mr. Eddy climbed a ladder to begin the job. As plaintiff was removing the old switch, the wrench predictably slipped off a rusted nut and passed close to an electric insulator. Fourteen thousand volts then arced over the insulator through the uninsulated wrench into plaintiff, causing him severe bodily injury.

Plaintiff alleges five causes of action in this lawsuit:

(1) negligence (Count I);
(2) intentional misconduct, prima facie tort (Count II);
(3) Fourteenth Amendment violation (Count III);

---

[1] Subsequent to Mr. Eddy's refusal, another lineman was assigned to perform the job, during which the pole collapsed causing injury and damage. *See* PLAINTIFF's OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, P.2.

(4) 42 U.S.C. § 1983 Violation (Count IV); and

(5) intentional infliction of emotional distress (Count V).

Defendants argue that the counts of the complaint either fail to state a claim for which relief may be granted or are barred by workers' compensation exclusivity under Virgin Islands law.

## II. Jurisdiction

### A. Plaintiff's Asserted Jurisdictional Bases

Plaintiff recites that the Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, since it is an action arising under the Constitution, laws and treaties of the United States. Specifically, Eddy claims that the action arises under the Fourteenth Amendment to the Constitution of the United States, 42 U.S.C. § 1983, and the Revised Organic Act of 1954.[2] Plaintiff asserts that jurisdiction is also conferred on the Court by 28 U.S.C. § 1343, because his civil claim is based on an alleged deprivation of rights guaranteed by the Constitution of the United States. The Court's jurisdiction over Eddy's other causes of action sounding in tort is claimed under the supplemental jurisdiction available through 28 U.S.C. § 1367(a).[3]

---

[2] The Revised Organic Act of 1954 is found at 48 U.S.C §§ 1541-1645 (1995), *reprinted in* V.I. CODE ANN., Historical Documents, pp. 73-177, preceding Title I (codified as amended) (1995) ["Revised Organic Act"]. This Court has jurisdiction of federal questions, 28 U.S.C. § 1331, by virtue of section 22(a) of the Revised Organic Act, 48 U.S.C. § 1612(a).

[3] 28 U.S.C. § 1367(a) provides that:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal Statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Although this Court is not a district court of the United States, is has the jurisdiction of a District Court of the United States for the purposes of this statute. *See* Revised Organic Act §§ 22(a), 23, 48 U.S.C. §§ 1612, 1613; *Moravian School Advisory Board v. Rawlins*, 33 V.I. 280, 70 F.3d 270 (3d Cir. 1995); *Brow v. Farrelly*, 28 V.I. 345, 994 F.2d 1027 (3d Cir. 1993).

Counts I, II and V, the claims over which plaintiff asks the Court to exercise supplemental jurisdiction, are tort claims, which are matters of state law. If the "federal question" claims in Counts III and IV are dismissed, the three tort claims would be best pursued

445

## B. Plaintiff's Federal Claims

Count III of plaintiff's complaint purports to state a cause of action against all the defendants under 28 U.S.C. § 1343(a)(3)[4] for a violation of the Fourteenth Amendment, distinct from the claims asserted under 42 U.S.C. § 1983. Count IV of Mr. Eddy's complaint asserts a cause of action under 42 U.S.C. § 1983 against WAPA and the individual defendants.[5]

### 1. Common elements

■ Plaintiff must allege two essential elements for a claim under either 28 U.S.C. § 1343)(a)(3) or 42 U.S.C. § 1983: (1) that the defendants' conduct deprived the plaintiff of rights, privileges, or immunities secured by the United States Constitution or federal law; and (2) that their conduct occurred under color of law.

### a. Deprivation of Rights under the Constitution

■ Plaintiff must show the Court that his claim alleges a deprivation of rights under the Constitution, in order to present a federal claim under either section 1343 or section 1983. If he cannot do so, then his claim is only one sounding in tort under local law, which would defeat this Court's subject matter jurisdiction. Plaintiff asserts that the defendants violated his rights to due process as guaranteed by the Fourteenth Amendment of the United States Constitution. Plaintiff's claim is based upon the injuries suffered

---

in the Territorial Court. Therefore, if the federal question claims are dismissed, the Court will decline to exercise supplemental jurisdiction over the other claims.

[4] Section 1343 of title 28 provides:

(a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person . . .

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States . . . .

[5] Section 1983 of title 42 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

446

by him. Therefore, the deprivation he asserts is one of substantive due process, since he contends that defendants failed to provide him a safe workplace by placing him in danger. He does not claim a deprivation of procedural due process, such as a wrongful denial of some type of fair administrative process.

■ The Supreme Court has stated that it "has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 117 L. Ed. 2d 261, 112 S. Ct. 1061 (1992). In Collins, the plaintiff was the wife of a municipal employee who had been asphyxiated while working in the sewers, resulting in his death. Plaintiff sued under 42 U.S.C. § 1983 for Fourteenth Amendment violations on the grounds that the municipality had the duty to give her husband adequate training to be able to handle the dangers associated with working in the sewers and to provide him a safe place in which to work.

In denying the claim, the Collins Court found that this type of case "is quite different from the constitutional claim advanced by plaintiffs in several of our prior cases who argued that the State owes a duty to take care of those who have already been deprived of their liberty." *Id.* at 127. The Supreme Court has expanded notions of Due Process to encompass situations in which a plaintiff's liberty had been restrained. *See, e.g., Turner v. Safley*, 482 U.S. 78, 96-97, 96 L. Ed. 2d 64, 107 S. Ct. 2254 (1987) (minimal standards for convicted felons); *Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244-245, 77 L. Ed. 2d 605, 103 S. Ct. 2979 (1983) (minimal standards for persons under arrest); *Youngberg v. Romeo*, 457 U.S. 307, 319-320, 73 L. Ed. 2d 28, 102 S. Ct. 2452 (1982) (minimal standards for persons in mental institutions); *Bell v. Wolfish*, 441 U.S. 520, 530, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979) (minimal standard for pretrial detainees).[6]

---

[6] The rationale employed by the Supreme Court in these cases is that a state must ensure the safety of those whose liberty it constrains, with the failure to do so rising to the level of a constitutional violation. In situations in which an individual's liberty is constrained, the Supreme Court is willing to find an affirmative duty to protect the individual. In the Collins case, the plaintiff sought to expand that duty to encompass the workplace. The

The Supreme Court explained why Mrs. Collins' allegations did not rise to the level of a constitutional claim:

> We are also not persuaded that the city's alleged failure to train its employees, or to warn them about known risks of harm, was an omission that can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense. Petitioner's claim is analogous to a fairly typical state-law tort claim: The city breached its duty of care to her husband by failing to provide a safe work environment. Because the Due Process Clause "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society," *Daniels v. Williams*, 474 U.S., at 332, we have previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law . . . The reasoning in those cases applies with special force to claims asserted against public employers because state law, rather than the Federal Constitution, generally governs the substance of the employment relationship.

*Collins*, 503 U.S. at 128. The Court thus held that "neither the text nor the history of the Due Process Clause supports petitioner's claim that the governmental employer's duty to provide its employees with a safe working environment is a substantive component of the Due Process Clause." *Id.* at 126.

In short, the Due Process Clause does not automatically transform every tort committed by a state or territorial actor into a constitutional claim. Claims which are essentially causes of action based in tort should remain such, unless there is action under the color of state law, or the exercise of some type of state authority, which would transform a state law tort claim into a constitutional cause of action. According to the Supreme Court, the city's deliberate indifference to the training and safety of Mr. Collins in the city sewers was not enough to "shock the conscience," and

Court found that absent such a constraint on Mr. Collins' liberty, the failure to provide a safe workplace did not have constitutional implications.

448

therefore Mrs. Collins failed to allege a constitutional claim. *Id. at 126, citing Rochin v. California*, 342 U.S. 165, 172, 96 L. Ed. 183, 72 S. Ct. 205 (1952).

■ Although Mr. Eddy's claim is also grounded in tort, there are substantial and striking differences in his allegations which transform his state law tort claim into a constitutional cause of action. In *Collins*, the plaintiff did not allege that the city had any specific intent to harm her husband, or even that city officials knew there was significant risk that he would be injured. 503 U.S. at 125. Instead, she simply alleged that the city had failed to provide adequate training and a safe working environment. Mr. Eddy, on the other hand, alleges that WAPA and its employees *knew* that he would face a risk of almost certain injury if he performed the work. The supervising electrician, Rawlins, whose job it should have been to change the switch, told Mr. Brown as much when he refused to perform the work and refused to let any of his electricians do it. Moreover, WAPA had previously suspended Mr. Eddy for refusing to climb a rotten wooden pole because it was unsafe, even though his concerns later proved accurate. Another worker was injured when the pole fell while he was performing the task plaintiff had refused to do. Mr. Eddy alleges that defendant Brown's threat of discipline if he did not change the switch was calculated to intimidate him with real economic consequences if he refused to do the work. This further distinguishes his case from that alleged in *Collins*.

The Court of Appeals for the Third Circuit attempted to clarify the Supreme Court's "shocks the conscience" test in the case of *Fagan v. City of Vineland*, 22 F.3d 1296 (3d Cir. 1994). Perhaps the most unambiguous statement in Fagan is that, while the Court of Appeals "is aware of the amorphous and imprecise inquiry that the "shocks the conscience" test entails (referred to in *Rochin* itself as "indefinite and vague," 342 U.S. at 172), it is the standard recently affirmed by a unanimous Supreme Court which we are bound to follow." *Id.* at 1308. Although the Court discussed the seemingly random decisions made in this area of the law and decided that the mere reckless indifference of government employees does not meet the "shocks the conscience" test, the panel also did not require specific intent to injure. Accordingly, in this Circuit

449

the "shocks the conscience" test requires something more than reckless indifference, but something less than specific intent. Because the plaintiff's allegations in *Fagan* amounted to no more than reckless indifference, the complaint was dismissed. *Id.* at 1308-1309.[7]

Once again, the factual scenario presented by Mr. Eddy differs significantly from that presented in Fagan. The Fagan plaintiffs were innocent victims of an accident arising from an allegedly improper high-speed police chase. However, the officers involved had no knowledge that the accident which occurred was imminent, or that the particular victims were about to be harmed. Accepting all of Mr. Eddy's factual allegations as true for the purpose of this motion to dismiss, he has alleged that defendants acted with significantly more than just reckless indifference. At this stage, the Court finds that reasonable minds could find that the defendants at best sanctioned, at worst intended Mr. Eddy's catastrophic injury, in order to avoid delaying the changing of the switch. These allegations, if true, are surely sufficient to "shock the conscience."

Although Mr. Eddy does not state that the defendants specifically intended to injure him, he does allege that they were virtually certain that he would suffer injury. Plaintiff further alleges that, not withstanding this knowledge, Brown ordered him to perform the work after providing him equipment which violated numerous OSHA regulations. The factual allegations presented by Mr. Eddy in Counts III and IV are sufficient to shock the conscience of this Court.

### b. Conduct/action under Color of State Law

■ In order for individual defendants to be held personally liable under section 1983, they must have acted under the color of territorial law. Fourteenth Amendment claims must allege that the conduct complained of was "state action." The Supreme Court has equated the requirement of acting under color of law with the state action requirement under the Fourteenth Amendment. *United*

---

[7] A lengthy, well-reasoned and spirited dissent argued that the Court of Appeals should adopt a reckless indifference standard for determining if conduct "shocks the conscience."

*States v. Price*, 383 U.S. 787, 794 n.7, 16 L. Ed. 2d 267, 86 S. Ct. 1152 (1966). The terms "state action" and "under color of state law" are functional equivalents, so that if an action is found to be under the color of state law, it is a state action, and vice versa. Therefore, any actions found to be under the color of state law for section 1983 purposes will also satisfy the state action requirement for Fourteenth Amendment purposes.

In the employment context, officers and employees of the States and their agencies, instrumentalities and political subdivisions will generally be acting under color of law when their actions are in furtherance or fulfillment of the tasks and obligations assigned to them, or made possible by the power conferred upon them by the government. *Monroe v. Pape*, 365 U.S. 167, 5 L. Ed. 2d 492, 81 S. Ct. 473 (1961), *overruled on other grounds, Monell v. Department of Social Services*, 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978). The Supreme Court has held that a person acts under the color of state law when exercising power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326, 85 L. Ed. 1368, 61 S. Ct. 1031, *reh'g denied*, 314 U.S. 707, 86 L. Ed. 565, 62 S. Ct. 51 (1941). According to the Supreme Court, "there can be no doubt . . . that Congress has the power to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe*, 365 U.S. at 167. Actions of state and local officers may be under the color of law even if they perform the acts in excess of their authority or even without authority. *See, e.g., Krier v. Amodio*, 441 F. Supp. 181 (E.D.Pa. 1977); *accord Azar v. Conley*, 456 F.2d 1382 (6th Cir. 1972); *Stringer v. Dilger*, 313 F.2d 536 (10th Cir. 1963). The Supreme Court has said that "acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it." *Screws v. United States*, 325 U.S. 91, 111, 89 L. Ed. 1495, 65 S. Ct. 1031 (1945).

■ There are two parts to deciding if state action is present. First, the deprivation must be caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible. Second,

the party charged with the deprivation must be a person who may fairly be said to be a state actor. *Lugar v. Edmondson Oil*, 457 U.S. 922, 937, 73 L. Ed. 2d 482, 102 S. Ct. 2744 (1981).

■ Under these broad guidelines, it is clear that the actions taken by WAPA, Brown and the other individual defendants were action performed under the color of law. The Virgin Islands Legislature authorized the creation of a public corporation called the Water and Power Authority with the privilege of employing individuals to carry out its statutory authority to provide water and electric power to the citizens of the Virgin Islands. 30 V.I.C. §§ 103-05. The defendants' authority to determine work assignments and make personnel decisions stems directly from the authority given under the Virgin Islands Code. The actions taken by WAPA are state action, since a public corporation's acts are state action under the Fourteenth Amendment. *See, e.g., Will v. Michigan Department of State Police*, 491 U.S. 58, 69 n.9, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989). The actions taken by the individual defendants in carrying out WAPA's statutory functions therefore also constitute state action. *See Lugar v. Edmonson Oil*, 457 U.S. at 937. The defendants' actions in deciding that the switch needed changing and in assigning plaintiff to do the work constitute action under color of territorial or state law necessary for a cause of action under either sections 1343 or 1983.

2. "Person" Amenable to Suit Under Sections 1983 and 1343

■ Plaintiff may only bring this action against those who are "persons" subject to suit for damages under section 1983. Just as a state is not a "person", *see Will v. Michigan Department of State Police*, 491 U.S. 58, 64-66, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989), so a territory is not a "person" as defined in section 1983. *Ngiraingas v. Sanchez*, 495 U.S. 182, 109 L. Ed. 2d 163, 110 S. Ct. 1737 (1990). Moreover, state officials acting in their official capacities are not subject to suit under section 1983, since "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself." *Will*, at 71 (citations omitted). Similarly, officers and. employees of a territory such as the Virgin Islands acting in their official capacities may not be

made defendants in a section 1983 action. *Ngiraingas*, at 192. Thus, as interpreted by the Supreme Court, a suit for money damages under 42 U.S.C. § 1983 may only be maintained against officers and employees of the Territory of the Virgin Islands individually, in their individual capacities and not in their official capacities, assuming, of course, that the two elements described above are shown. *See Jarvis v. Government of the Virgin Islands*, 919 F. Supp. 177, 180 n.4 (D.V.I. 1996); *Nibbs v. Roberts*, 31 V.I. 196, 207-210 (D.V.I. 1995).

Whether a defendant is or is not a person within the meaning of section 1983, however, does not "necessarily prevent the plaintiff's cause of action from being maintained under the Fourteenth Amendment . . . ." *Braden v. Univ. of Pittsburgh*, 477 F.2d 1, 7 n. 10 (3d Cir. 1973), citing *Brown v. Board of Education*, 347 U.S. 483, 486-496, 98 L. Ed. 873, 74 S. Ct. 686 (1954). Accordingly, plaintiff's claim under the Fourteenth Amendment and section 1343 properly lies against WAPA and the individual defendants in their official capacities.

The net effect of the Supreme Court decisions interpreting 42 U.S.C. § 1983, including *Will* and *Ngiraingas*, is to treat the territories and their officials and employees the same as states and their officials and employees. When used in this opinion, "under color of state law" and "state action" means the same as "under color of territorial law" and "territorial action."[8]

---

[8] In *Will v. Michigan Department of State Police*, 491 U.S. 58, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989), the Supreme Court held that the Eleventh Amendment bars suits against a state unless the state has waived immunity, or unless Congress has exercised its power under section 5 of the Fourteenth Amendment to override that immunity. *Id.* at 66. The Court found that while the scope of the Eleventh Amendment and the scope of section 1983 are separate issues, the scope of the Eleventh Amendment was helpful in deciphering Congressional intent in enacting section 1983. The Court concluded that considering the scope of the Eleventh Amendment and the choice by Congress to use the word "person" in section 1983, Congress did not intend to use its power under section 5 of the Fourteenth Amendment to override the immunity of the States established by the Eleventh Amendment when it enacted section 1983.

In *Ngiraingas v. Sanchez*, 495 U.S. 182, 109 L. Ed. 2d 163, 110 S. Ct. 1737 (1990), the Supreme Court held that neither the Territory of Guam nor an officer of the Territory acting in his official capacity was a person within the meaning of section 1983. In this case, the Court of Appeals for the Ninth Circuit had arrived at the same result under the concept that the Territory of Guam was no more than a federal instrumentality, and thus not a person within the meaning of section 1983. *See Ngiraingas v. Sanchez*, 858 F.2d 1368, 1371-1372 (9th Cir. 1988), *aff'd*, 495 U.S. 182, 109 L. Ed. 2d 163, 110 S. Ct. 1737 (1990). The

### a. WAPA Is Not a "Person" Under Section 1983

█ Plaintiff bases his section 1983 action against WAPA on the basis that it is the "alter ego" of the Government of the Virgin Islands. This assertion is accurate, as WAPA was established by 30 V.I.C. §§ 103-105 as a public corporation and autonomous governmental instrumentality of the Government of the Virgin Islands. Plaintiff's claim against WAPA fails for that very reason. Since the Government of the Virgin Islands is not a "person," its "alter ego" and autonomous instrumentality similarly cannot be sued under section 1983. Plaintiff's claims under section 1983 against WAPA therefore must be dismissed.

### b. WAPA Employees May be Sued Personally Under Section 1983

█ Plaintiff has also named individual defendants in his complaint. Territorial employees may not be sued in their official capacities for damages under section 1983, since a suit against a territorial employee in his official capacity would be the same as a suit against the territorial treasury. Instead, money damages may only be sought from the employees personally acting in their individual capacities. The Supreme Court has held that the official capacity-individual capacity distinction is best understood as a

---

Supreme Court rejected the Ninth Circuit's reasoning. Instead of holding that the Territory of Guam was a federal instrumentality, the Court ruled that Congress had not intended territories to be encompassed by the word "person" as used in section 1983. *Ngiraingas* at 192. The rationale employed by the Supreme Court relied largely on the decision in *Will*, which held that states were not "persons" under section 1983, largely due to the immunity reserved by the Eleventh Amendment. *Id.* at 190-192.

The concept of equating a territory's capacity for being sued to that of a state is not new. The Court of Appeals for the Third Circuit held that the Virgin Islands was to be treated as a "body politic . . . with attributes of sovereignty, such as non-liability to suit without its consent." *Harris v. Boreham*, 233 F.2d 110, 114 (3d Cir. 1956). That decision clarified that "Congress may create a territorial government for an unincorporated territory and may confer upon it an autonomy similar to that of the states." *Id.* Employing a similar rationale, the Third Circuit Court of Appeals held that the relations between the District Court of the Virgin Islands and the Territorial Court of the Virgin Islands should be treated identically to that between the United States District Courts and the State Courts, relying on the Revised Organic Act § 23, 48 U.S.C. 1613. *Moravian School Advisory Board of St. Thomas v. Rawlins*, 33 V.I. 280, 70 F.3d 270, 277 (3d Cir. 1995). The District Court of the Virgin Islands has similarly determined that the sovereignty possessed by the Virgin Islands is similar to that of the states. *See Jackson v. The West Indian Company, Ltd.*, 944 F. Supp. 423 (D.V.I. 1996)

The overriding effect of the court decisions interpreting Congressional intent has been to treat the Territory of the Virgin Islands as a state in matters relating to sovereignty, jurisdiction of local and district courts, and interpretation of statutes.

reference to the capacity in which the officer is sued, not the capacity in which the officer inflicts the alleged injury. *See Hafer v. Melo*, 502 U.S. 21, 26, 116 L. Ed. 2d 301, 112 S. Ct. 358 (1991). Actions may be maintained against individuals in their individual capacities under section 1983, so long as these actions were performed by the individuals within the scope of their official duties. *Id.* Therefore, the employees of WAPA, Brown and DOES I-IV, may be sued only in their individual capacities only under section 1983 for damages inflicted on plaintiff in the course of performing their duties at WAPA.

### 3. Plaintiff's Surviving Federal Claims

Plaintiff has successfully shown that the action complained of "shocks the conscience," and thereby has stated a claim for the deprivation of his substantive due process rights as guaranteed by the Fourteenth Amendment. Therefore, his claim is a constitutional claim, as opposed to a tort claim under local law. Plaintiff has successfully shown that WAPA's actions satisfied the "state action" requirement, because WAPA authority stems directly from statutory directives. Accordingly, plaintiff has successfully alleged a claim for the violation of his rights under the Fourteenth Amendment against all defendants, as cognizable under 28 U.S.C. § 1343. Plaintiff has also alleged a claim under 42 U.S.C. § 1983, in that he claims a deprivation of due process as protected by the Fourteenth Amendment under color of state law. However, this otherwise satisfactory claim must be dismissed against WAPA and the individual defendants in their official capacity, as they are not "persons" as that term is used in 42 U.S.C. § 1983. This claim may only be pursued against the individual defendants in their individual capacities.

### III. Plaintiff's Tort Claims

Section 251 of Title 24 of the Virgin Islands Code defines the terms used in the Workers' Compensation chapter. Under section 251(c)(4) "the following persons are exempt from this Chapter . . . Any person for whom a rule of liability for injury or death is provided by the laws of the United States." Under this statute, workers' compensation exclusivity does not bar a plaintiff from

prosecuting claims arising under federal law. This statute does not, however, resuscitate claims which would otherwise be barred by workers' compensation exclusivity under local law, as plaintiff's counsel admitted during argument. Rather than entering a protracted legal battle over the state of workers' compensation exclusivity under Virgin Islands law, plaintiff's counsel instead withdrew Counts I and II, and chose to proceed on Counts III, IV and V. Counts III and IV have already been addressed, and are not affected by workers' compensation exclusivity according to 24 V.I.C. § 251(c)(4).

Count V is a claim for intentional infliction of emotional distress. The question arises whether this claim runs afoul of workers' compensation exclusivity. This Court has found that "claims such as reckless infliction of emotional distress . . . are not in themselves related to the type of injuries covered by the Virgin Islands workmen's compensation scheme." *Robinson v. Hess Oil Virgin Islands Corp.*, 19 V.I. 106, 109 (D.V.I. 1982). Accordingly, Mr. Eddy's claim is outside of the workers' compensation scheme, and may be pursued as long as plaintiff makes sufficient factual allegations to support such a claim.

■ This Court has recently addressed the necessary showing regarding intent for maintaining a claim of intentional infliction of emotional distress.

> An intentional infliction of emotional distress is committed when, "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another . . . ." RESTATEMENT (SECOND) OF TORTS, § 46. *See Cox v. Keystone Carbon Co.*, 861 F.2d 390 (3d Cir. 1988); *Moolenaar v. Atlas Motor Inns, Inc.*, 616 F.2d 87 (3d Cir. 1980); *Alvarezo v. Pueblo Int'l, Inc.*, 24 V.I. 141, 147 (Terr.Ct. 1988) (the defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society," citing RESTATEMENT (SECOND) OF TORTS, § 46, cmt. d).

*Codrington v. Virgin Islands Port Authority*, 33 V.I. 215, 911 F. Supp. 907, 915 (D.V.I. 1996).

At this pleading stage, plaintiff has alleged sufficient facts to satisfy the intent requirement of a cause of action for intentional infliction of emotional distress against the individual defendants. Plaintiff has alleged facts which, if true, would support a finding that the individual defendants recklessly caused severe emotional distress to another.

As discussed earlier, a district court may exercise supplemental jurisdiction over claims which form part of the same case or controversy as those claims over which the court has original jurisdiction. Certainly, the intentional infliction of emotional distress claim is part of the same controversy as the deprivation of Mr. Eddy's Fourteenth Amendment rights. Accordingly, the Court will exercise its supplemental jurisdiction over plaintiff's claim for intentional infliction of emotional distress against the individual defendants.

Whether plaintiff will prevail on his claim for intentional infliction of emotional distress against WAPA is another question. There are two cases on which this claim may be asserted against an employer. The first is when the individual employee is in fact the "alter ego" of the corporation, so that the actions of the individual became the actions of the employer. *See, Chinnery v. Government of the Virgin Islands*, 865 F.2d 68 (3d Cir. 1989). This standard is a difficult one to meet, as plaintiff must be able to show that the actor possessed sufficient authority to act as the employer itself, as opposed to acting as a mere supervisory employee. Taking the facts presented by plaintiff as true for the purposes of this motion, the Court cannot conclude that as a matter of law Mr. Brown was not the alter ego of WAPA. Brown may be solely responsible for personnel decisions regarding the assignment of jobs to employees. These assignments became part of WAPA's actions, which obviously had permanent consequences which could not be undone. Without more information on Mr. Brown's role at WAPA, the Court cannot say that Mr. Brown was not the alter ego of WAPA.

This Court has also found that claims of intentional infliction of emotional distress may be imputed to the employer when a corporation is made aware of unlawful conduct of a supervisor and outrageously fails to address it. *Ivy Dawson v. Hess Oil Virgin Islands Corp.*, Civ. No. 1990-162 (July 25, 1995). The Court, however,

457

has severely limited this exception to those situations in which the failure to investigate a supervisor's wrongdoing is truly outrageous. In such situations, the Court has analogized that the employer would have virtually intended the harm, requiring at a minimum that the employer became aware of the harm and sanctioned its continuation by doing nothing about it. *See Codrington v. Virgin Islands Port Authority*, 33 V.I. 215, 911 F. Supp. 907, 910 (D.V.I. 1996). This exception is limited to those situations in which the employer's conduct approaches an actual intent of the institution to inflict emotional distress. Absent such a sanctioning effect by an employer's failure to take corrective measures, claims of intentional infliction of emotional distress may not be imputed to the employer.

The outrageous failure to investigate exception would not apply to WAPA and Mr. Brown, because of the short period of time involved in these events. There is no evidence that WAPA was ever given notice of Mr. Brown's decision to assign the switch replacement to plaintiff. Moreover, WAPA could not "outrageously fail to investigate" in this case, since there was insufficient time between Brown's work assignment to Eddy and the accident for any investigation to take place. Accordingly, the Court will allow plaintiff to proceed in his claim against WAPA for intentional infliction of emotional distress only on the theory that Mr. Brown is the alter ego of WAPA.

## IV. Conclusion

For the reasons stated herein, Counts I and II will be dismissed. Count III will be dismissed against WAPA, but will not be dismissed against the individual defendants in their individual capacities. Counts IV and V will not be dismissed.

ENTERED this 5th day of February, 1997.

## ORDER

For the reasons set forth in the accompanying Memorandum, it is hereby

ORDERED that defendants' motion to dismiss Counts I and II of plaintiff's complaint is GRANTED. It is further

ORDERED that defendants' motion to dismiss plaintiff's cause

of action under 42 U.S.C. § 1983 (Count III) against the Virgin Islands Water and Power Authority and the individual defendants in their official capacities is GRANTED, while defendants' motion to dismiss this cause of action against the individual defendants in their individual capacities is DENIED. It is also

ORDERED that defendants' motion to dismiss plaintiff's cause of action under the Fourteenth of Amendment (Count IV) is DENIED. It is further

ORDERED that defendants' motion to dismiss plaintiff's cause of action for intentional infliction of emotional distress (Count V) is DENIED.

ENTERED this 5th day of February, 1997.