**FITZROY FERRIS, Plaintiff**

v.

**V.I. INDUSTRIAL GASES, INC., Defendant**

Civil No. 1985/334

District Court of the Virgin Islands

Div. of St. Croix

April 22, 1987

FRANCIS J. D'ERAMO, ESQ. (ISHERWOOD, HUNTER & COLIANNI), St. Croix, V.I., *for plaintiff*

TODD H. NEWMAN, ESQ. (NICHOLS, NEWMAN & SILVERLIGHT), St. Croix, V.I., *for defendant*

O'BRIEN, *Judge*

## MEMORANDUM OPINION

The question presented in this motion for summary judgment is whether intentional torts should be excepted from the exclusivity of the workmen's compensation remedy. In line with the vast majority of American jurisdictions, we hold that employers are liable at common law for injuries deliberately inflicted on employees. However, the plaintiff has failed to state a claim under this exception and his tort action must, therefore, be dismissed.

## I. FACTS

Plaintiff Fitzroy Ferris' job description as an employee of defendant Virgin Islands Industrial Gases, Inc. ("VIGAS"), was to clean and paint gas cylinders. On May 14, 1985, a VIGAS supervisor gave Ferris an electric drill and ordered him to remove a defective safety plug from an acetylene cylinder. The electric drilling ignited the gas and burned Ferris' upper body. VIGAS did not rehire him upon his recovery five weeks later.

Ferris filed for and received workmen's compensation benefits totalling $1,016.66. The hearing officer determined that Ferris was a VIGAS employee at the time of the explosion. This disposition was not appealed. Moreover, VIGAS was cited for two safety violations charging that Ferris was unqualified to perform plug removal and had used an improper procedure.[1] The former charge was eventually withdrawn and VIGAS paid a $360 fine for the latter.

In December 1985, Ferris filed suit contending that VIGAS acted negligently in ordering him to perform work in a hazardous manner. He has moved to amend his complaint to characterize this act as "intentional misconduct" and to add counts of retaliatory discharge and breach of his employment contract's covenant of good faith. In support of the new theories, Ferris affirms that he applied for compensation benefits upon the representation of a VIGAS supervisor that it was a condition for being rehired. He also contends that VIGAS later fired him outright for refusing to execute a release in its favor.

VIGAS moves to dismiss the original complaint on the grounds that Ferris' exclusive remedy is workmen's compensation benefits.

---

[1] See 29 C.F.R. 1910.101(b) and 1910.102(a) (1986) respectively.

## II. DISCUSSION

■■ VIGAS moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b) (6). In determining the sufficiency of the pleading, we are bound by the rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46 (1957). Moreover, the factual allegations of the complaint must be viewed as true. D.P. Enterprises, Inc. v. Bucks County Community College, 725 F.2d 943, 944 (3d Cir. 1984).

■■ Consideration of matters outside the pleadings converts a motion to dismiss into one for summary judgment. Carter v. Stanton, 405 U.S. 669, 671 (1972). Since both parties rely on documents extraneous to the pleadings, this motion will be viewed as one for summary judgment. Under Rule 56, summary judgment is proper if the nonmoving party cannot show a factual dispute warranting a trial. E.g., Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552–53 (1986).

A. *The Tort Claim*

The Virgin Islands Workmen's Compensation Act prohibits an employee from suing the employer for injuries suffered in the course of employment and installs a no fault system of limited recovery to redress these claims. It provides:

> Exclusivness of remedy
>
> When an employer is insured under this chapter, the right herein established to obtain compensation shall be the only remedy against the employer; but in case of accident to, or disease or death of, an employee not entitled to compensation under this chapter, the liability of the employer is, and shall continue to be the same as if this chapter did not exist.

24 V.I.C. § 284. An "employee" is "any person including a minor, employed under any appointment or contract, express or implied, oral or written, or in the service of any employer." 24 V.I.C. § 251(a) (Supp. 1986).

Ferris received compensation benefits on the basis of a determination that he was a "regular" VIGAS employee. He contends that § 284's bar is nevertheless inapplicable because he was either an independent contractor or temporary employee. These claims are unfounded.

186

■ Temporary help is not excluded from the statutory definition of employee and, consequently, if Ferris is to be exempted he must be found to be an independent contractor. The vehicle for distinguishing an employee from an independent contractor is Restatement (Second) of Agency § 220. ICA. Larson, Workmen's Compensation Law, § 43.10 (1986). Accord Vanterpool v. Hess Oil V.I. Corp., 766 F.2d 117, 123 (3d Cir. 1985) cert. denied, 106 S.Ct. 801 (1986).[2] The key difference is that, unlike the former, the latter retains control over the manner in which work is performed. Rest. § 220 (2)(a) and comment e. Ferris bases VIGAS's tort culpability on the manner in which it instructed him to remove the safety plug. This belies his claim of autonomy. Moreover, Ferris characterizes himself as an unskilled laborer incapable of appreciating the hazards of his task, thus undercutting any contention that he was engaged in a journeyman trade. See id. § 220(2)(b)–(e). Finally, Ferris does not contest that he received an hourly wage and a weekly paycheck from VIGAS. Id. § 220(2)(g). He claims only to have been paid "off the books" and excluded from the plant's union. Finally, he contends that his receipt of compensation benefits is inconclusive because VIGAS tricked him into filing the claim.

---

[2] Section 220 provides:
Definition of Servant
(1) A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.
(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:
(a) the extent of control which, by the agreement, the master may exercise over the details of the work;
(b) whether or not the one employed is engaged in a distinct occupation or business;
(c) the kind of occupation, with reference to whether in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
(d) the skill required in the particular operation;
(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
(f) the length of time for which the person is employed;
(g) the method of payment, whether by the time or by the job;
(h) whether or not the work is a part of the regular business of the employer;
(i) whether or not the parties believe they are creating the relation of master and servant; and
(j) whether the principal is or is not in business.

■ As the nonmoving party, Ferris bears the burden of producing evidence that creates a genuine factual issue for trial. Celotex, supra at 2553. A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986). Pursuant to Rule 56(c), the proof must be comprised of affidavits, depositions, answers to interrogatories, or admissions on file. Celotex, supra at 2552–53. The only sworn document submitted by Ferris recounts the failure of VIGAS to rehire him. Thus, facts have not been raised to dispute VIGAS' claim that Ferris was an employee for purposes of compensation benefits and, therefore, the tort suit must be dismissed unless we recognize an exception to the compensation bar that creates a cause of action for injuries resulting from the employer's reckless and/or intentional acts. This is a matter of first impression in the Virgin Islands.

As noted supra, workmen's compensation legislation creates a trade-off in legal rights.

> 'In some instances where he could prove negligence, an employee may receive less compensation than he would recover in damages in a common law suit. In other situations, an employer may have to pay compensation where he would not be liable for any sum at common law. Despite inequities in specific cases, the underlying assumption is that, on the whole, the legislation provides substantial justice.'

Wilson v. Asten-Hill Manufacturing Company, 791 F.2d 30, 32 (3d Cir. 1986) quoting Weldon v. Celotex Corp., 695 F.2d 67, 70 (3d Cir. 1982). Ferris contends, however, that the compensation bar should not immunize an employer who intentionally or recklessly perpetuates a dangerous workplace in which injuries are, at least, substantially certain to result. He concludes that the threat of suit will give employers incentive to maintain a safe work environment.

An overwhelming majority of American jurisdictions recognize that an employer may be sued at common law for inflicting "genuine intentional injury" upon the employee. To fit within this narrow exception, the putative plaintiff must allege that the employer committed the tortious act with an actual, specific and deliberate intention to injure him. E.g., Wilson, supra at 34 (applying Pennsylvania law); Copeland v. Johns-Manville Products Corp., 492 F. Supp. 498, 500 (D.N.J. 1980) (applying New Jersey

188

law); Kittell v. Vermont Weatherboard, Inc., 417 A.2d 926, 927 (Vt. 1980); Griffin v. George's, Inc., 589 S.W.2d 24, 27 (Ark. 1979) (in banc); Williams v. International Paper Company, 181 Cal. Rept. 342, 346 (Cal. App. 1982); Collier v. Wagner Castings Company, 388 N.E.2d 265, 269 (Ill. App. 1979) aff'd 408 N.E.2d 198 (1980); Higley v. Weyerhauser Company, 534 P.2d 596, 598 (Wash. App. 1975); Finch v. Swingly, 348 N.Y.S.2d 266, 268 (N.Y. App. 1973). See generally, Larson, supra at § 68:13. The classic example is a battery committed by a sole proprietor. See e.g., Elliot v. Brown, 569 P.2d 1323 (Alaska 1977); Larson, supra at § 68:11.[3]

Ferris' proposed amended complaint alleges that VIGAS created a dangerous work environment through "negligence, recklessness and intentional misconduct" by failing to provide him with the appropriate tools, safety clothing and adequate instruction. Attempts to classify similar contentions as intentional torts are almost always unsuccessful because the actual injury remains accidental in character even where the corporate employer knowingly permitted a hazardous work condition to exist, willfully failed to provide a safe place to work or intentionally violated a safety statute. Thus, the compensation bar has been enforced where an employer operated a saw mill despite knowledge of a potentially fatal hazard, Williams, supra, failed to instruct an unskilled employee how to perform a hazardous task, Kittell, supra, or removed safety devices from machinery, Griffin, supra. See also Rosales v. Verson, 354 N.E.2d 553, 558–60 (Ill. App. 1976). In each case, the result was inescapable because

> what is being tested . . . is not the degree of gravity or depravity of the employer's conduct, but rather the narrow issue of intentional versus accidental quality of the precise event producing quality of the precise event producing injury. The intentional removal of a safety device or toleration of a dangerous condition may or may not set the stage for an accidental injury later. But in any normal use of the words, it cannot be said, if such an injury does happen, that this was deliberate infliction of harm comparable to an intentional left jab to the chin.

[3] This construction has emerged through both legislative enactment and judicial decision. Compare Kittell, supra; Griffin, supra; Schlenk v. Aerial Contractors, Inc., 268 N.W.2d 466 (N.D. 1978) to Copeland, supra; Williams, supra; Higley, supra.

Larson, supra at § 68:13.

Ferris urges that we adopt the broader definition of "intent" of Restatement (Second) of Torts § 8A, which provides:

> The word "intent" is used throughout the Restatement of this Subject to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.

Only Ohio and Louisina incorporate § 8A into their intentional tort exception. See e.g., Jones v. VIP Development Company, 472 N.E.2d 1046, 1051 (Ohio 1984); Boudeloche v. Grow Chemical Coatings Corp., 728 F.2d 759, 761 (5th Cir. 1984) (applying Louisiana law). Significantly, this is the minimum mental state that can trigger common law culpability.[4]

■■ This court is legally bound to follow the majority rule. 1 V.I.C. § 4. See, Polius v. Clark Equipment Company, 802 F.2d 75, 77 (3d Cir. 1986). Accordingly, we join with the majority of jurisdictions in holding that employers are liable at common law for intentional torts suffered by employees. However, it is

---

[4] Prior to 1983, West Virginia recognized a judge-made exception for "willful, wanton, and reckless misconduct." Mandolidis v. Elkins Industries, 246 S.E.2d 907, 913 (W. Va. 1978). However, this expansive view was replaced by statutory definitions of intent, one of which adopts the majority view stated supra. The other holds an employer liable for maintaining a dangerous work environment if these elements are proved:

(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(B) That the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition;

(C) That such specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of such employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C) hereof, such employer nevertheless thereafter exposed an employee to such specific unsafe working condition intentionally; and

(E) That such employee so exposed suffered serious injury or death as a direct and proximate result of such specific unsafe working condition.

W. Va Code § 23-4-2(c)(2)(ii)(A)–(E) (1985 Replacement Vol.).

See Handley v. Union Carbide Corp., 620 F. Supp. 428 (S.D.W. Va. 1985) aff'd 804 F.2d 265 (4th Cir. 1986).

incumbent upon the plaintiff to plead and prove that his injuries were the result of the employer's conscious design. The facts herein, as pleaded by Ferris, lack this crucial allegation. His injuries purportedly resulted from VIGAS' intentional maintenance of a hazardous workplace. To state a claim under the intentional tort exception, Ferris was also required to allege that the hazards existed because *VIGAS wanted to injure Ferris*. We are, therefore, constrained to conclude that these facts cannot support a claim of intentional tort.[5]

## B. *The Wrongful Discharge Claims*

Finally, Ferris moves to amend his complaint to allege wrongful discharge in violation of public policy and breach of his employment contract's implied covenant of good faith and fair dealing. Both of these proposed counts are based on the failure of VIGAS to rehire Ferris upon his recovery.

 The Virgin Islands modifies an employer's right to terminate an at-will employment by imposing a statutory duty to rehire injured workers. The law, 24 V.I.C. § 285, provides in part:

> Mandatory rehiring of injured employee
> (a) An employer shall rehire any employee who—
> (1) has been disabled and thereby unable to continue his employment, as certified under this chapter, and
> (2) immediately after the termination of the disability, applies to the employer for reemployment in the position which he held, at the time of the injury, or in a substantially equivalent position, unless the employer satisfies the Commissioner either that the employee, as a result of the injury, will be unable to resume in full his previous obligations and duties, or that the employer had terminated the employment after the accident for just cause. No employee rehired under this section may be subsequently dismissed without just cause.

Section 285 codifies an important public policy and the theory of retaliatory discharge is a valid means of redressing a violation of it. See e.g., Michelson v. Exxon Research and Engineering Company, 629 F. Supp. 418, 425–26 (W.D. Pa. 1986); Rettinger v. American Can Company, 574 F. Supp. 306, 308–11 (M.D. Pa. 1983).

---

[5] Our holding prevents analysis of other prerequisites, the most important of which is whether a corporate employer should be vicariously liable for an intentional tort inflicted by one employee on another. But see Larson, supra at § 68.21.

See generally Larson, supra at § 68:36(a). In terminating employment, the employer also owes a duty of good faith and fair dealing to an at-will employee. Petersen v. First Federal Savings and Loan Association of Puerto Rico, Inc., 617 F. Supp. 1039, 1042 (D.V.I. 1985) (citations omitted). This precludes discharge without good cause. Gianaculas v. Trans World Airways, Inc., 761 F.2d 1391, 1394 (9th Cir. 1985) quoting Cleary v. American Airlines, Inc., 168 Cal. Rept. 722, 729 (Cal. App. 1980). The facts of this case state a claim under both theories and, consequently, Ferris may amend his complaint accordingly.

## III. CONCLUSION

In accordance with the foregoing, we hold that Ferris' tort claim will be dismissed with prejudice but that his complaint may be amended to state counts of retaliatory discharge and breach of the duty of good faith and fair dealing.

## SUMMARY JUDGMENT

THIS MATTER is before the Court on the motion of defendant Virgin Islands Industrial Gases, Inc., for summary judgment. Plaintiff Fitzroy Ferris has moved to amend his complaint to allege counts of retaliatory discharge and breach of his employment contract's covenant of good faith and fair dealing and to allege that the defendant committed "intentional misconduct." Having filed an opinion of even date herewith, and the premises considered, now therefore it is

ORDERED and ADJUDGED:

THAT the motion of the defendant for summary judgment be, and the same is hereby GRANTED, and

THAT the motion of the plaintiff to amend his complaint is GRANTED with respect to adding counts of retaliatory discharge and breach of the covenant of fair dealing and good faith. It is DENIED with respect to the tort claim.