**DAVID L. MONOSON, Plaintiff**
**v.**
**KAREN BLYDEN, Director of Personnel; RAMON DAVILA,**
**Commissioner of Police; ROY L. SCHNEIDER,**
**Governor of the Virgin Islands; GOVERNMENT**
**OF THE VIRGIN ISLANDS, Defendants**

Civil No. 479/1998

Territorial Court for the Virgin Islands

Division of St. Thomas and St. John

October 9, 2002

■■■■■■■■■■■■■■■■

KARL R. PERCELL, ESQ., Law Offices of Percell & Hermon-Percell, P.C., St. Thomas, VI, *Attorney for Plaintiff*

WAYNE G. ANDERSON, ESQ., Assistant Attorney General, Department of Justice, St. Thomas, VI, *Attorney for Defendants*

MEYERS, *Judge*

## MEMORANDUM OPINION

(October 9, 2002)

THIS MATTER is before the Court on Plaintiff's Motion For Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules of Civil Procedure and supported by affidavits and various discovery documents. This Court, having reviewed the aforementioned motion and supporting documents, and having found that the facts and evidence support judgment in Plaintiff's favor as a matter of law, will grant the motion.

### I. Factual and Procedural Background

At some point prior to June 1981, Plaintiff was awarded a Bachelor of Science ("B.S.") degree in criminology. On or about June 22, 1981, Plaintiff was hired as a police officer by the Virgin Islands Police Department ("Police Department").[1] Plaintiff resigned from this position in April 1989. Between October 3, 1981[2] and April 14, 1989, Defendants paid Plaintiff his base salary as well as a twenty percent (20%) pay differential based on his educational qualifications. During this time, Plaintiff was also given periodic pay increments as credit for time of

---

[1] At the time of Plaintiff's hire, the Police Department was known as the Department of Public Safety. The name was changed by Act of Jun. 15, 1984, No. 4962, § 1(b), Sess. L. 1984, p. 177.

[2] Defendants admit that Plaintiff was paid the educational pay differential, but deny that this payment began when Plaintiff was first hired. Indeed, it is evident from filed documents that the pay differential began in October 1981, not April 1981 (Plaintiff's date of hire).

service. On April 11, 1995,[3] Plaintiff was re-employed by the Police Department in the Patrol Division. Plaintiff claims that before being re-hired, he attended an interview[4] with Police Department personnel during which he was assured that he would be paid a higher salary based on two types of pay increases: one to compensate for more than seven and a half (7½) years of prior service with the force, and the other as an educational pay differential for his degree. Plaintiff was not compensated for either the previous years of service pay or the pay differential for his educational qualifications. Defendants assert that the reason for this is that Plaintiff did not formally request these payments.

Plaintiff claims that in January 1996[5] he was told by the Police Personnel Director that the Central Personnel Office had denied his pay for prior years of service. Plaintiff took several steps toward remedying this situation. First, on January 24, 1996, Plaintiff wrote a brief memo describing a Level 3 grievance to Defendant Police Commissioner Ramon Davila ("Commissioner Davila") explaining that his service pay and pay differential were being erroneously denied him. On May 9, 1996, Captain Vincent Georges ("Captain Georges") issued a memo to Plaintiff, apparently suggesting that he initiate his grievance at a different level.[6] Plaintiff did so, and on May 16, 1996, Chief Brown heard

---

[3] Although Plaintiff's Complaint and Defendants' Answer (by admission) both reflect that Plaintiff returned to the force in April 1996, we assume this was a clerical error as Plaintiff describes interactions with personnel in January 1996 [Plaintiff's Answers to Defendants' First Set of Interrogatories, question 3], presumably while attempting to resolve his grievance. Assuming that these interactions took place after Plaintiff was re-hired, the date of re-hire must have been before January 1996, if the date of interactions was correct.

[4] The exact date of this interview has not been established. Police Chief Elroy Brown's ("Chief Brown") decision indicates that the interview occurred in January 1995, but Plaintiff's answers to interrogatories indicate that it took place in January 1996. In any case, common sense dictates that the interview occurred prior to the re-hire date, presumably in April 1995.

[5] It is not clear whether this date is correct. This date is stated as January 1996 in interrogatory answers, but in the Decision of Hearing, it is January 1995. We assume that the year is 1995, but only if this announcement was made at the interview. However, it could also have been made in 1996, after he was hired in 1995.

[6] This memo is confusing. On the one hand, Captain Georges claimed that Levels 1 and 2 could not give Plaintiff the requested relief and announced that Plaintiff should have been sent directly to Level 3. On the other hand, he suggested that Plaintiff

Plaintiff's Level 2 grievance and issued a Decision of Hearing dated May 24, 1996, recommending that Plaintiff be compensated for his years of service and pay differential for his B.S. degree. In this decision, Chief Brown did not address the Defendants' position that Plaintiff did not formally request either the service pay or the educational pay differential. On May 31, 1996, Commissioner Davila issued a memo in response to Chief Brown's Decision of Hearing, refusing to implement the Chief's recommendations, claiming that applicable law forbade the requested action and arguing that only officers who, while employed, continued their education with the advanced approval of the necessary officials were eligible for educational pay differentials. Commissioner Davila also denied Plaintiff's request for prior years of service pay without explanation. Thereafter, the parties entered into negotiations but were not able to agree on a settlement. On September 23, 2001, Defendants adjusted Plaintiff's salary granting him credit for his previous years of service, effective that day.

Plaintiff now moves this Court for declaratory relief based on the interpretation of two concepts: higher pay based on previous experience with the force (Plaintiff's work from 1981 to 1989) and a pay differential based on educational qualifications (for a B.S. degree in criminology).

## II. Standard For Summary Judgment

The standard for granting summary judgment on an action for declaratory judgment is the same as for any other type of relief. *Cloverland-Green Spring Dairies, Inc. v. Pennsylvania Milk Marketing Bd.*, 298 F.3d 201, 210 n.12 (3d Cir. 2002). When a party seeks adjudication in the form of summary judgment, the Court is governed by Rule 56 of the Federal Rules of Civil Procedure, as applied to the Territorial Court by Rule 7 of the Territorial Court Rules. Summary judgment must be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Green v. Hess Oil Virgin Islands*

---

take his grievance to Level 2. In any case, it is obvious that there was a slight confusion as to which level was appropriate for Plaintiff's grievance, but it was eventually heard by someone in the level deemed appropriate by police administrators.

*Corp.*, 29 V.I. 27, 30 (Terr. Ct. St. C. 1994). The movant bears the burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit. *Ferris v. V.I. Industrial Gases, Inc.*, 23 V.I. 183 (D.C.V.I. 1987). All reasonable inferences must be made in favor of the non-moving party. *In re Tutu Water Wells Contamination Litig.*, 78 F. Supp. 2d 456 (D.V.I. 1999). This applies even where a party does not respond to a summary judgment motion, so judgment must be denied unless the movant meets its initial burden of showing the absence of material facts in dispute. *Cams v. Hess Oil Virgin Islands Corp.*, 78 F. Supp. 2d 417, 419 n.2 (D.C.V.I. 1999) (citing *Ascencio v. Ramirez*, 20 V.I. 508, 512 (D.V.I. App. 1984)). However, a "mere scintilla of evidence in support of the [opponent's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opponent] ... by a preponderance of the evidence." *Anderson*, 477 U.S. at 252.

## III. Discussion

When deciding an action for declaratory judgment, a trial court must declare the parties' respective rights and obligations. "Any person ... whose rights, status or other legal relations are affected by a statute ... may have determined any question of construction or validity arising under the ... statute ... and obtain a declaration of rights, status or other legal relations thereunder." 5 V.I. CODE ANN. § 1262. Plaintiff asks that this Court determine the meaning of the provisions in the Virgin Islands Code outlining payment of extra monies for past time served with the Police Department and for educational accomplishments.[7]

---

[7] "Generally, courts do not assume jurisdiction of declaratory judgment proceedings until administrative remedies have been exhausted; and where an appeal from an action of an administrative body is provided, declaratory judgment will be denied." *Flavo-Rich v. Quinn*, 18 V.I. 530, 533 (D.V.I. 1981). However, exhaustion is an affirmative defense, which can be waived if not properly preserved by a defendant. *See Ray v. Kertes*, 285 F.3d 287, 292 (3d Cir. 2002). Defendants here have not raised any issues related to exhaustion. Accordingly, even assuming that such an argument could be made, it has clearly been waived, and we therefore need not address whether Plaintiff has properly exhausted the administrative remedies which may or may not have been available.

It is clear that all police officers are eligible for some type of pay increase or differential at the time of hire, if they qualify. "An employee in a position subject to this subchapter shall be paid at the rate within the grade of his position determined in accordance with this chapter together with any pay differential applicable to him provided under this subchapter." 3 V.I. CODE ANN. § 556. "New appointments shall normally be made at the minimum rate of the appropriate grade plus any applicable pay differential." 3 V.I. CODE ANN. § 557. The only question that remains is whether Plaintiff qualified for these pay increases.

## A. Prior Years of Service

In January 1996,[8] Plaintiff was informed that his previous years of service—1981 to 1989—would not be considered in calculating his base pay. This is in direct contravention of Virgin Islands law, which requires that base pay include payment for time of service in grade. 3 V.I. CODE ANN. § 57o(b). There is no requirement that the time of service be served consecutively. Indeed, common sense militates against such an interpretation. A plain reading of the statute shows that there are no other conditions on the officer's previous service. It is not even explicitly required that the service be satisfactory. Furthermore, the purpose of the statute is to compensate officers for their past work, and it would seem that previous experience as a police officer working in the same police department would qualify. Absent any statutory language to the contrary, this is the only reasonable interpretation.

Accordingly, the Court finds that Plaintiff was entitled to a pay increase included in his base pay equaling payment for the time he served in his previous employment as a police officer with the Police Department. Defendants have conceded that they owe Plaintiff this service pay, but have only implemented it as of September 23, 2001. This was incorrect. Prior years of service must be calculated into Plaintiff's base pay *effective as of his re-hire date.*

## B. Educational Pay Differential

The Virgin Islands Code established "a career incentive pay program offering pay differentials to police officers of all ranks of the U.S. Virgin

---

[8] The accuracy of this date is also in question. *See* previous footnotes relating to date discrepancies in this case.

Islands Police Department ... as a reward for furthering their education in the field of police ... work beyond the minimum qualifications set forth in the job class specifications for positions held by such employees." 3 V.I. CODE ANN. § 570(a).

 Before an officer may qualify for this program, he must meet certain requirements. All degrees used as a basis for a pay differential must be earned in an accredited educational institution. 3 V.I. CODE ANN. § 570(c). It is unclear where Plaintiff earned his degree. Defendants did not question whether Plaintiff's post secondary school of study was accredited, so the Court infers that it was an accredited institution. Virgin Islands law also requires that any courses taken must be in fields related to the performance by the employee of present or possible future official duties with the Police Department, "in order to increase the knowledge, proficiency, ability, skill and qualifications of the employee in the performance of his official duties." 3 V.I. CODE ANN. § 570(c). A degree in criminology certainly qualifies as a field related to a police officer's duties. 3 V.I. CODE ANN. § 570(d), *amended by* Act of Feb. 1, 2001, No. 6391, § 2(h), Sess. L. 2000, p. 452. Once the relevance of the degree is established according to Section 570(d), the statute requires a twenty percent (20%) pay increase for a baccalaureate degree. 3 V.I. CODE ANN. § 570(b)(5). Plaintiff, therefore, qualifies for the twenty percent (20%) pay differential.

 Defendants cite another reason for denying Plaintiff the educational pay differential; *i.e.* he completed his degree prior to joining the Police Department in 1981. This is not a valid basis for denying payment of this differential. "[A] newly hired police officer ... who *prior to being employed* by the Government of the Virgin Islands earned a college degree or college credits in ... criminal justice, including criminology, ... shall be eligible to receive a pay differential." 3 V.I. CODE ANN. § 570(d), *amended by* Act of Feb. 1, 2001, No. 6391, § 2(h), Sess. L. 2000, p. 452 (emphasis supplied). Although this portion of the statute was enacted in 2001, the intent of the original authors is clear from the following 1972 language: "All present classified employees of the Division of Police and Prison of the Department of Public Safety *who have already earned college credits or hold degrees* which would qualify them for the pay differentials provided in section 1 of this Act shall receive such pay differentials effective on the first pay period following receipt and verification of official transcripts by the Director of

87

Personnel." 3 V.I. CODE ANN. § 570, *amended by* Act of Nov. 29, 1972, No. 3337, § 2, Sess. L. 1972, p. 510. The similarity between the language at the inception of the Act and the subsequent 2001 amendment indicates that the original intent of the drafters was to qualify employees for a pay differential whether the degree was earned prior to or during the employee's tenure with the Police Department.

The statute has certain formalistic requirements before an employee may be awarded this educational pay incentive. Pay differentials falling under this career incentive pay program must be added to the basic compensation of employees effective for the first pay period following receipt and verification of official transcripts by the Director of Personnel. 3 V.I. CODE ANN. § 570(d). Employees are responsible for transmittal of all transcripts to the Director of Personnel. 3 V.I. CODE ANN. § 570(d). Neither Plaintiff's Complaint, Motion for Summary Judgment, nor the Decision of Hearing by Chief Brown addresses this requirement. However, it is clear that Defendants paid Plaintiff this pay differential from October 1981, the date of his first employment, to April 1989, when he resigned. The forms announcing Plaintiff's salary clearly describe a twenty percent (20%) differential for a Bachelor of Science degree "in accordance with Act # 4540." (*See* Exhibit 2 of Plaintiff's Motion for Summary Judgment.) Although there is no evidence as to whether Plaintiff completed the formal transcript submission and verification process, it is clear that Defendants were paying him the educational pay differential and citing applicable law. The fact that Defendants would now like to interpret that law differently does not change their past conduct. Defendants interpreted the pay incentive statute in Plaintiff's favor for almost eight (8) years. Defendants' conduct between 1981 and 1989 indicates that either Plaintiff complied with all formal transcript submission requirements or that Defendants waived same. However, Defendants granted him the differential regardless, leading Plaintiff to believe that nothing further was needed from him for this payment. Thus, because of Defendants' conduct during Plaintiff's first employment, Defendants are estopped from denying Plaintiff's qualification for the same pay differential during his re-employment.

## IV. Conclusion

Plaintiff is entitled to his pay differential for both his prior years of service and his educational qualifications, effective on his re-hire date.

Accordingly, summary judgment will be granted in favor of Plaintiff. An appropriate judgment follows.