

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-21-2004

# Eddy v. VI Water Power Auth

Precedential or Non-Precedential: Precedential

Docket No. 02-4057

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Eddy v. VI Water Power Auth" (2004). *2004 Decisions.* Paper 654.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/654

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

—————

NO. 02-4057

—————

GABRIELLE EDDY

v.

VIRGIN ISLANDS WATER AND
POWER AUTHORITY;
JAMES BROWN;
JOHN DOE I; JOHN DOE II;
JOHN DOE III; JOHN DOE IV

Virgin Islands Water
and Power Authority,
Appellant

—————

On Appeal From the District Court of the
Virgin Islands
(D.C. Civil Action No. 96-cv-00048)
District Judge: Hon. Thomas K. Moore

—————

Argued December 9, 2003

BEFORE: NYGAARD, BECKER and
STAPLETON, <u>Circuit Judges</u>

(Opinion Filed: May 21, 2004)

—————

Samuel H. Hall, Jr. (Argued)
Marie E. Thomas
Birch de Jongh Hindels & Hall
Poinsettia House at Bluebeard's Castle
1330 Estate Taarnebjerg
Charlotte Amalie
St. Thomas, USVI 00802

Cathy M. Smith
Virgin Islands Water & Power Authority
P.O. Box 1450
Charlotte Amalie
St. Thomas, USVI 00804

 Attorneys for Appellant

James M. Derr (Argued)
P.O. Box 664
Charlotte Amalie
St. Thomas, USVI 00804

 Attorney for Appellee

—————

<u>OPINION OF THE COURT</u>

—————

STAPLETON, Circuit Judge:

The Virgin Islands Water and Power Authority ("WAPA") appeals from a judgment entered on a verdict finding it liable to Gabrielle Eddy ("Eddy") for intentional infliction of emotional distress. WAPA further appeals the denial of their renewed motion for judgment as a matter of law. Because the evidence viewed in the light most favorable to Eddy will not

support recovery on an intentional infliction of emotional distress claim that is not barred by the exclusive remedy provision of the Virgin Islands Workers' Compensation Act, we will reverse the judgment of the District Court of the Virgin Islands and will direct that judgment be entered in favor of WAPA.

## I. *Factual and Procedural Background*

### A. Factual Background[1]

Gabrielle Eddy was employed by WAPA as a first class lineman trained to do "hot line" work, where power lines remain energized while work is being done. On June 2, 1994, Eddy's crew was directed by its foreman to report to the High Yard, an area of WAPA's St. Thomas power plant with large electrical switches that are bigger and closer together than switches found out in the field where Eddy usually worked. The crew was to perform what an internal WAPA memo would later describe as "planned corrective and preventative maintenance" on a high voltage switch in the yard. Eddy informed his foreman, James Brown, that he had not been trained for work in the High Yard. Brown responded, "Well, Mr. Eddy, we want you to do it, or [face] disciplinary action." JA at 1376. Brown then informed Eddy that work on the switch had to be performed hot for economic reasons.[2]

The crew did not have enough insulating material to cover up all exposed areas of the switch, and, accordingly, while Eddy covered most of the switch with insulating materials, the back area remained uninsulated. In addition, Eddy was not provided with an insulated wrench, which was necessary to safely perform maintenance on the switch.

Nonetheless, Brown directed Eddy to repair the partially uninsulated switch with the uninsulated wrench. Eddy protested, responding to Brown: "You've got to be crazy. You've got to be kidding me. In there so close, I mean, you got to be kidding me," JA at 1380, and further objected to using the uninsulated wrench.

Eddy had been previously sent home twice for refusing to perform unsafe work.

---

[1] As our standard of review in evaluating a motion for judgment as a matter of law, discussed *infra*, requires us to "view[] the evidence in the light most favorable to the non-movant and giv[e] it the advantage of every fair and reasonable inference," *W.V. Realty, Inc. v. N. Ins. Co.*, 334 F.3d 306, 311 (3d Cir. 2003), we state the facts herein in the light most favorable to Eddy.

[2] Eddy attended a meeting sometime before the day of the accident at which WAPA announced that all work in the High Yard would be performed hot. Eddy protested, along with another employee, that employees did not have the proper training or equipment for hot line work in the High Yard.

Several other WAPA workers testified to having similar experiences.[3] Eddy believed that if he refused to work on the switch in the High Yard that day, he would be sent home, and would be terminated or suspended.

Eddy climbed twenty feet up a ladder as directed to repair the switch. During the repair, as Eddy used the uninsulated socket wrench to loosen a nut, the nut moved suddenly and the back of the wrench made contact with the back of the switch, causing an electrical arc. Eddy was burned by the hot flash from the arc and briefly lost consciousness.

Eddy was in severe pain after the accident. He suffered partial and full thickness burns (requiring skin grafts), and was burned on his face, chest, legs, and groin. Eddy has since suffered flashbacks during his sleep, seeing himself being electrocuted again. He has suffered from

---

[3]At least three other individuals testified as to having similar experiences: Joel Dowdye ("I was one of those individuals who was sent home numerous times for refusing to do work when I thought it was unsafe."), JA at 1098-99, Kenval Thomas (WAPA's policy was "either you do the work or you get sent home."), JA at 1180 *et seq.*, and Cleve Stridiron ("[W]ell, if you refuse, they basically say – they send you home. They suspend you. Like you either do it or you don't, and then you'll be, you know, punished after that."), JA at 1223-24.

problems with impotence, and his personality has changed completely since the accident. He has been, at times, severely depressed, angry, and stressed out. Eddy's treating psychologist, Dr. Thomas Tyne, initially diagnosed him as suffering from general anxiety disorder, along with posttraumatic stress disorder. In 1995, Dr. John Massimo, Eddy's treating psychiatrist, diagnosed him as suffering from major depressive disorder and posttraumatic stress disorder. Eddy was prescribed antidepressants, an antipsychotic, and sedatives.

By 1997, nearly three years after the accident, Dr. Tyne diagnosed Eddy as suffering from a permanent moderate psychological impairment. In 2001, Dr. Tyne determined that Eddy was still suffering from posttraumatic stress disorder and anxiety disorder. His general anxiety disorder resulted in major depression, and Eddy still suffered from flashbacks, remembrances, inability to concentrate, inability to sleep, and disruption in eating and daily functioning activities.

## B. Procedural Background

Eddy collected worker's compensation as a result of the June 2, 1994 accident. He also filed this five-count lawsuit on March 21, 1996. Counts IV and V were tried by a jury. Count IV alleged a violation of 42 U.S.C. § 1983 by Brown for depriving Eddy of various rights, but the jury found in favor of Brown. Count V alleged intentional infliction of emotional

distress against both Brown and WAPA.

After moving for judgment as a matter of law at the close of Eddy's case, WAPA renewed its motion at the close of evidence, arguing, *inter alia*, that "[p]laintiff presented no evidence that he suffered emotional distress after hearing Defendant Brown's alleged words, nor was there any emotional distress flowing from Brown's conduct prior to Plaintiff climbing the latter." JA at 216. The motion was denied. The jury found against Brown and WAPA on Count V, and reached a verdict in the amount of $5,000.00 against Brown and $1,000,000.00 against WAPA. The jury determined that Brown either (1) acted as WAPA's alter ego or (2) was directed or authorized by WAPA.

The District Court entered a judgment reflecting the verdict. Brown paid the judgment against him and did not appeal. WAPA filed a timely motion for judgment notwithstanding the verdict. WAPA's motion for judgment notwithstanding the verdict was thereafter denied, and WAPA filed this timely appeal.

II. *Jurisdiction and Standard of Review*

The District Court had supplemental jurisdiction over the intentional infliction of emotional distress claim pursuant to 28 U.S.C. § 1367(a) and 48 U.S.C. § 1612(a). We have jurisdiction to review the final judgment of the District Court under 28 U.S.C. § 1291.

WAPA argues that the record is devoid of evidence to support the elements of a claim for intentional infliction of emotional distress, the claim on which the jury found WAPA liable. "We review the District Court's decision denying a motion for judgment as a matter of law *de novo*, and apply the same standard that the District Court did, namely whether, viewing the evidence in the light most favorable to the non-movant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *W.V. Realty, Inc.*, 334 F.3d at 311 (citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993)). We set forth the familiar standard for determining the sufficiency of the evidence in the margin.[4]

---

[4] In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version. Although judgment as a matter of law should be granted sparingly, a scintilla of evidence is not enough to sustain a verdict of liability. The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence

## III. *Discussion*

While WAPA raises numerous arguments as to why it is entitled to judgment as a matter of law, WAPA's central argument attacks the sufficiency of the evidence in support of a claim for intentional infliction of emotional distress ("IIED"), given the liability limitations imposed by the Virgin Islands Workers' Compensation Act (the "WCA"). Because it is dispositive of this appeal, we will only address that argument.[5]

After discussing the elements of an IIED claim and the claim preclusion provision of the WCA, we will address the sufficiency of the evidence with respect to the two IIED theories discussed by the parties. The first theory is that Eddy suffered severe emotional distress compensable under IIED because Brown forced him to choose between performing an unsafe task or potentially losing his job–a job he could not afford to lose (the "pre-accident emotional distress claim"). According to WAPA, this is the only theory that could escape the bar of the WCA, but there is no evidence to support it. The second theory, stressed by Eddy on appeal, is that Brown coerced Eddy into performing unsafe maintenance work, thereby causing the accident, physical injury and severe emotional distress (the "post-accident emotional distress claim").

### A. The Tort of Intentional Infliction of Emotional Distress

"[T]he Virgin Islands has designated the Restatement as its law, until a contrary statute is approved." *Monk v. Virgin Islands Water & Power Authority*, 53 F.3d

---

upon which the jury could properly find a verdict for that party. Thus, although the court draws all reasonable and logical inferences in the nonmovant's favor, we must [reverse] an order [denying] judgment as a matter of law if, upon review of the record, it is apparent that the verdict is not supported by legally sufficient evidence. *Brennan v. Norton*, 350 F.3d 399, 425 n.20 (3d Cir. 2003) (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993) (citations and internal quotations omitted)).

[5]WAPA argues, *inter alia*, that there is insufficient evidence to support the jury's finding that (1) Brown was the alter ego of WAPA or (2) WAPA authorized or directed Brown's conduct. Because our other holdings are dispositive of this appeal, we will assume *arguendo* that sufficient evidence supports the jury's finding that WAPA is liable for Brown's conduct, and we treat the actions of Brown and WAPA as one for purposes of this appeal.

1381, 1387-88 (3d Cir. 1995) (citing 1 V.I.C. § 4).[6]  Section 46 of the Restatement (Second) of Torts provides:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

*Id.*

For there to be "severe emotional distress,"

> Comment j to § 46 requires that a plaintiff prove that he suffered severe distress that is not unreasonable, exaggerated, or

unjustified. The same comment further notes that severe distress may encompass mental anguish, fright, horror, grief, worry, and other emotional disturbances. The extent of the severity is to be measured by whether any 'reasonable man could be expected to endure it.'

*Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1275-76 (3d Cir. 1979) (*en banc*) (quoting § 46 cmt. j).

With respect to the "intentional" or "reckless" element of § 46, according to Comment i to § 46,

> The rule stated in this Section applies where the actor desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct. It applies also where he acts recklessly . . . in deliberate disregard of a high degree of probability that the emotional distress will follow.

*Id.*; *see Chuy*, 595 F.2d at 1275 (analyzing comment i); *see also* 2 Dan B. Dobbs, *The Law of Torts* § 303, at 826 (2001) ("Dobbs") (for the "intentional" or "reckless" element of § 46 to be met, the "defendant must intend severe emotional harm (or reckless risk of it) and such harm must in fact result"). A defendant acts "intentionally" when he acts with the purpose or desire to inflict severe

---

[6] 1 V.I.C. § 4 provides:

> The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

emotional distress, or acts knowing that such distress is substantially certain to result from his conduct. Restatement (Second) of Torts § 8A. "Mere risk, however, even a very high risk, is not enough to show substantial certainty." Dobbs § 24, at 48. Instead, a defendant acts with substantial certainty where he knows with virtual certainty "that [his] actions will bring about the result." *Id.* A defendant acts "recklessly" where he

> does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of [severe emotional distress] to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

Restatement (Second) of Torts § 500; *see also* Restatement (Second) of Torts § 46.

## B. The Exclusive Remedy Provision of the WCA

The exclusive remedy provision of the WCA, 24 V.I.C. § 284(a), provides, in pertinent part:

> When an employer is insured under this chapter, the right herein established to obtain compensation shall be the only remedy against the employer; but in case of accident

to, or disease or death of, an employee not entitled to compensation under this chapter, the liability of the employer is, and shall continue to be the same as if this chapter did not exist.

24 V.I.C. § 284(a).

The threshold inquiry in determining "whether the exclusive remedies of workmen's compensation apply is whether the injuries complained of fit within the definition of 'injury' set forth in the statute [as compensable], namely, 'harmful change[s] in the human organism.'" *Robinson v. Hess Oil V. I. Corp.*, 19 V.I. 106, 109 (D.V.I. 1982) (quoting 24 V.I.C. § 251(a) (1981));[7] *see*

---

[7]Despite not having been expressly repealed, in 1994 the § 251 referenced in *Robinson* and entitled "Definition and application," providing definitions for various terms used in the workers' compensation chapter, no longer appeared in the Virgin Islands Code. At that time, Session Law 6033 added to § 251 new definitions for several terms. *See* 1994 V.I. Sess. Laws 6033, at 239. However, another portion of that same Act read "Section 251 is amended to read as follows" and provided for an entirely different § 251 that was unrelated to defining terms used in the Act. *Id.* at 245. 24 V.I.C. § 251 now codifies the new, unrelated § 251, and the previous list of definitions of terms used in the workers' compensation chapter, including the terms

that were supposed to have been added in 1994, no longer appears in the Virgin Islands Code.

Since Session Law 6033 was passed, two courts have assumed that the pre-1994 § 251 is still in existence. *See Eddy v. Virgin Islands Water and Power Authority,* 955 F. Supp. 468, 478 (D.V.I. 1997) (noting that "Section 251 of Title 24 of the Virgin Islands Code defines the terms used in the Workers' Compensation chapter" and quoting a definition from the pre-1994 § 251); *Boudreaux v. Sandstone Group*, 1997 WL 289867, *6 (V.I. Terr. Ct. 1997) (referring to the definition of "employer" in the pre-1994 § 251). At least one Court has held that the workers' compensation statute in the Virgin Islands explicitly does not define "employer." *See Nickeo v. Atlantic Tele-Network Co.*, 2003 WL 193435, *4 (V.I. Terr. Ct. 2003) ("Conspicuously absent from the workers' compensation statute is a definition of 'employer'. . . .").

The Virgin Islands legislature may wish to amend Title 24 to ensure that the Code contains definitions for the workers' compensation chapter. Nonetheless, we need not resolve today this ambiguity between the pre-1994 § 251 and the "amended" § 251 now codified at 24 V.I.C. § 251. Even assuming *arguendo* that Virgin Islands law no longer provides definitions for terms used in the workmen's compensation chapter (and therefore no longer defines "injury"), there can be no doubt that Eddy's severe burns resulting from the June 2, 1994 accident

*Chinnery v. Gov't of the V. I.*, 865 F.2d 68, 71-72 (3d Cir. 1989) (to be compensable under the WCA, "injuries must have arisen out of and in the course of his employment" and have "resulted in a harmful change to him") (internal quotation marks and alterations omitted); *see also* 6 Arthur Larson, *Larson's Workers' Compensation Law* § 104.05, at 104-18 to -21 (2000) ("Larson") (analyzing in the context of IIED whether physical injury of the kind dealt with by the relevant workers' compensation statute is present). Where the employer's conduct has caused physical injury and the only emotional distress is that resulting from those physical injuries, the injury fits the statutory definition and is compensable under the WCA. The employee is entitled to workers' compensation but cannot make an additional claim for emotional distress. *Chinnery*, 865 F.2d at 72 (where employee suffered a physical injury compensable under the WCA, it "does not matter that [he] also suffered mental or nervous injuries"); *see also* Larson § 104.05, at 104-18 to -21.

There is, however, an implied exception to this literal application of § 284(a). We recognized in *Chinnery* that, regardless of the character of the injury,

_____

would constitute physical "injury" under any definition, thereby bringing Eddy's post-accident injuries within the scope of the WCA. Indeed, Eddy applied for and was granted benefits under the WCA because of his post-accident injuries.

there is an exception to the exclusivity bar for tort suits where the employee can show that "the conduct [of the employer can] be regarded as so egregious as to exceed the bounds of negligence and constitute the sort of intentional wrongdoing necessary to comprise an exception to the exclusive remedy provision of WCA § 284(a)." *Chinnery*, 865 F.2d at 72 (citing *Johnson v. Mountaire Farms of Delmarva, Inc.*, 503 A.2d 708, 714 (Md. 1986) (Maryland's Act will only allow a tort suit "where [the] employer had determined to injure an employee or employees within the same class and used some means to accomplish this goal.")).

The scope of this implied exception to the bar of § 284(a) was explored in *Ferris v. Virgin Islands Industrial Gases, Inc.*, 23 V.I. 183 (V.I. Terr. Ct. 1987), in a case much like the one before us. There, Ferris's supervisor gave him an electric drill and ordered him to remove a defective safety plug from an acetylene cylinder. The electric drill ignited the gas, seriously burning Ferris. When he sued his employer, it moved for summary judgment on the ground that, under § 284, Ferris's sole remedy was workmen's compensation. Ferris argued in response that § 284 was not intended to bar suit for injuries recklessly or intentionally caused. While the Court recognized an implied exception for intentionally inflicted injuries, it stressed that that exception was limited to situations in which there is an "actual, specific and deliberate intention to injure":

An overwhelming majority of American jurisdictions recognize that an employer may be sued at common law for inflicting "genuine intentional injury" upon the employee. To fit within this narrow exception, the putative plaintiff must allege that the employer committed the tortious act with an actual, specific and deliberate intention to injure him.

*Ferris*, 23 V.I. at 188.

Based on this standard, the *Ferris* Court rejected the claim that § 284 was inapplicable because the employer's failure to provide Ferris with appropriate tools, safety clothing, and adequate instruction made an accident virtually certain to occur:

Ferris' proposed amended complaint alleges that VIGAS created a dangerous work environment through "negligence, recklessness and intentional misconduct" by failing to provide him with the appropriate tools, safety clothing and adequate instruction. Attempts to classify similar contentions as intentional torts are almost always unsuccessful because the actual injury remains accidental in character even where the corporate employer knowingly permitted a hazardous work condition to exist, willfully failed to provide a safe place to work or intentionally

9

violated a safety statute. Thus, the compensation bar has been enforced where an employer operated a saw mill despite knowledge of a potentially fatal hazard, [*Williams v. Int'l Paper Co.*, 181 Cal. Rptr. 342 (Cal. Ct. App. 1982)], failed to instruct an unskilled employee how to perform a hazardous task, [*Kittell v. Vt. Weatherboard, Inc.*, 417 A.2d 926 (Vt. 1980)], or removed safety devices from machinery, [*Griffin v. George's, Inc.*, 589 S.W.2d 24 (Ark. 1979)]. *See also* [*Rosales v. Verson*, 354 N.E.2d 553, 558-60 (Ill. App. Ct. 1976)]. In each case, the result was inescapable because what is being tested . . . is not the degree of gravity or depravity of the employer's conduct, but rather the narrow issue of intentional versus accidental quality . . . of the precise event producing injury. The intentional removal of a safety device or toleration of a dangerous condition may or may not set the stage for an accidental injury later. But in any normal use of the words, it cannot be said, if such an injury does happen, that this was deliberate infliction of harm comparable to an intentional left jab to the chin.

*Ferris*, 23 V.I. at 189-90 (quoting 2A Arthur Larson, *Workmen's Compensation Law* § 68.13 (1986)).

Ferris pointed the Court to § 8A of the Restatement (Second) of Torts under which intent to cause injury includes not only situations in which the actor desires to cause injury, but also situations in which the actor believes that the injury is substantially certain to result. In response, the Court acknowledged that a minority of jurisdictions had expanded the exception beyond "actual, specific, and deliberate intent to harm," but construed § 284 consistent with the majority of jurisdictions interpreting analogous workers' compensation statutes.

More recently, the District Court of the Virgin Islands reaffirmed the limited scope of this exception to § 284 in *Gass v. Virgin Islands Telephone Corp.*, 149 F. Supp. 2d 205, 211 (D.V.I. 2001) (granting summary judgment for employer because "nothing suggest[ed] that Gass' injuries resulted from his 'employer's conscious design'"), *rev'd in part on other grounds*, 311 F.3d 237 (3d Cir. 2002).

The *Ferris* Court was correct in its conclusion that a majority of jurisdictions construe their analogous statutes to permit a common law suit only when there is an intent to cause harm. *See* Larson § 103.03, at 103-7 to -8 (it remains an "almost unanimous rule" that "the common law liability of the employer cannot . . . be stretched to include accidental injuries

caused by . . . reckless . . . misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting an injury"). It was likewise correct in concluding that it should not attribute to the Virgin Islands legislature an intention to adopt the minority rule. As we explained in a comparable situation where the District Court of the Virgin Islands adopted a majority rule of statutory construction:

> As the district court observed, the Daniels present no evidence that the Virgin Islands legislature, in enacting [the statute], intended to adopt the minority position on this issue. Accordingly, we cannot say that the district court erred in following the majority rule. *Cf.* V.I. Code Ann. titl 1, § 4 (1967) (rules of common law, as generally understood and applied in the United States, shall be the rules of decision in Virgin Islands courts); *see also Dyndul v. Dyndul*, 541 F.2d 132, 134 (3d Cir. 1976) (even for matters that are not strictly part of the common law, V.I. Code Ann. tit. 1, § 4 is impressive evidence that the Virgin Islands legislature intends majority rule to govern).

*Benoit v. Panthaky*, 780 F.2d 336, 339 (3d Cir. 1985).

We thus conclude that the intentional tort exception to the exclusive remedy provision of the WCA is limited to situations in which the employer had an actual, specific and deliberate intention to cause injury.

## C. The Sufficiency of the Evidence

In order to uphold Eddy's judgment, we must find that the evidence viewed in the light most favorable to him will support a claim that both satisfies the elements of § 46 of the Restatement (Second) of Torts and avoids the bar of WCA § 284. As we have noted, two theories of recovery have been suggested. We will examine each in turn to determine whether either of them meets both of these requirements.

### 1. The Pre-Accident Emotional Distress Claim

The first theory suggests that Eddy suffered compensable pre-accident emotional distress because Brown forced him to choose between performing an unsafe task and losing his job. We agree with WAPA that a rational jury could not find for Eddy on this claim.

The evidence viewed in the light most favorable to Eddy does establish that Brown's directive presented Eddy with a hard choice and that this conduct could be regarded by a rational juror as extreme and outrageous and done in reckless disregard of an obvious risk. There is no evidence, however, which could support a finding that being presented with that choice occasioned emotional distress for Eddy "so severe that no reasonable man could be expected to endure it." Restatement

11

(Second) of Torts § 46 cmt. j. Neither Eddy's own testimony nor that of the others who were present reveals any indication of such severe distress resulting from the directive prior to the accident. To the contrary, Eddy's own testimony suggests that he believed he could perform the work Brown requested without getting hurt. Eddy testified, "I didn't know I would have get hurt. . . . If I know I was going to get hurt, I wouldn't have be there." JA at 1414. Further, Eddy indicated that "[i]f Mr. Brown tell me to go do the job, I figure everything is safe." JA at 1417. There is no evidence Eddy suffered any symptoms immediately preceding the accident that one would associate with severe emotional distress. Instead, Eddy accepted the assignment, prepared the job site for the work, removed three nuts off the top of the switch while working within three feet of the energized conductors, and requested another wrench because the one he was using would not fit. He waited for the second wrench to arrive, took it, and continued his work until his hand slipped and the accident occurred.

### 2. The Post-Accident Emotional Distress Claim

Assuming *arguendo* that the emotional distress Eddy suffered as a result of the accident and his physical injuries would otherwise be compensable under IIED, this claim comes within the literal scope of the WCA because Eddy clearly suffered statutory "injuries." Accordingly, there can be liability on this claim only if it is not barred by the exclusive remedy provision of the WCA.

As we have explained, a literal application of § 284 bars recovery for severe emotional distress occasioned by an injury giving rise to a right to compensation under the WCA. To escape this bar, Eddy was required to prove that his injury was the result of conduct intended to cause injury. Thus, to escape the bar of § 284, Eddy would have had to prove that Brown gave his directive for the purpose of causing harm to Eddy. He did not do so.

Because the District Court erroneously regarded all IIED claims as being beyond the scope of § 284,[8] it did not ask the jury whether Brown acted with a purpose to injure – rather, it instructed that liability could be predicated on a finding of recklessness. The jury apparently found recklessness on the part of Brown, and the record clearly supports that finding. The record provides a basis for concluding that Brown's conduct created a very grave risk of injury to Eddy and that Brown acted in deliberate disregard of that risk. Indeed, as Eddy stresses, his expert expressed the opinion that the "chance of an accident

---

[8] *See Eddy*, 955 F. Supp. at 478 ("claims such as reckless infliction of emotional distress . . . are not in themselves related to the type of injuries covered by the Virgin Islands workmen's compensation scheme") (quoting *Robinson*, 19 V.I. at 109) (internal quotation marks omitted).

occurring" was "a hundred percent." JA at 1539. Nevertheless, the record undeniably shows that Eddy was injured in an "*accident.*" Brown's conduct may have set the stage for that accident, but nothing suggests that he had an affirmative desire to inflict severe emotional distress on Eddy.

Accordingly, Eddy's post-accident emotional distress claim is barred by WCA § 284(a).[9]

## IV. *Conclusion*

We will reverse the judgment of the District Court and remand with instructions to enter judgment in favor of WAPA.

---

[9]Relying upon § 47 of the Restatement (Second) of Torts, WAPA raises a provocative argument suggesting that no IIED cause of action can lie with respect to this post-accident theory because Brown risked invading Eddy's right to physical well-being as opposed to his right to be free from severe emotional distress. *See* Restatement (Second) of Torts § 47 ("Except as stated in [the Restatement's sections on assault], and in [the section on IIED], conduct which is tortious because intended to result in bodily harm to another or in the invasion of any other of his legally protected interests does not make the actor liable for an emotional distress which is the only legal consequence of his conduct."). We have no occasion here to express an opinion as to whether in the absence of the WCA an IIED claim could properly be predicated on this second theory.

13